Filed 8/30/18; pub. & mod. order 9/21/18 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D072642 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD256119) |
| GAVIN SCOTT LAIRD, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Lisa R. Rodriguez, Judge.  Affirmed.


Angela Bartosik, Chief Deputy Public Defender, and Michael Begovich, Deputy Public Defender, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Enid Camps and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

Gavin Laird appeals the denial of his motion for expungement of his DNA sample from the state's data bank following a reduction in his conviction to an infraction "for all purposes" under Proposition 64. His appeal raises an issue of first impression: when an offender whose guilty plea to a felony marijuana conviction is later reduced to an "infraction for all purposes," does the redesignation justify expungement of his previously collected DNA sample from the state's database? We conclude it does not and affirm the trial court's order.

## BACKGROUND

Laird was arrested on felony marijuana charges in May 2014, at which time he provided his DNA by mouth swab (buccal swab). He pleaded guilty to one felony count for violating Health and Safety Code section 11357, subdivision (a) for possessing not more than eight ounces of concentrated cannabis.[1] As part of his plea, the state agreed to reduce the charge to a misdemeanor after 18 months of successful, informal probation. In October 2016, Laird filed a petition for reduction of his offense to a misdemeanor under Penal Code section 1170.18, subdivisions (f) and (g).[2] The court granted the petition. In March 2017, Laird filed a petition asking the court to set aside the misdemeanor conviction and to designate an infraction under Proposition 64, which the court did.

---

[1]    A subsequent declaration by Laird as well as the charging document and the police officer's report indicate Laird was not in possession of concentrated cannabis, but he possessed less than 28.5 grams of cannabis at the time of his arrest.

[2]    Further statutory references are to the Penal Code unless otherwise specified.

2

Laird then moved to have his DNA expunged from the state's database, which the court denied.

DISCUSSION

Laird contends his conviction's redesignation to an infraction for all purposes under Proposition 64 justifies his DNA sample's expungement under that proposition, as well as under Proposition 69. As we explain, we disagree.

The interpretation of a statute is a question of law, subject to de novo review. (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.) We review voter initiatives by applying the same principles that govern our interpretation of statutes passed by the Legislature. (*People v. Rizo* (2000) 22 Cal.4th 681, 685.) In doing so, we turn first to the words of the provision adopted by voters, giving language its plain and ordinary meaning. (*People v. Birkett* (1999) 21 Cal.4th 226, 231.) If the language is ambiguous, "we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." (*Id.* at p. 243.) We construe statutory language "in context, keeping in mind the statutes' nature and obvious purposes," and we "harmonize the various parts of the enactments by considering them in the context of the statutory frame work as a whole." (*People v. Cole* (2006) 38 Cal.4th 964, 975.)

A. *Proposition 64 does not require DNA expungement*

As a general rule, unless a statute expressly states it is retroactive, it is treated prospectively. (*People v. Brown* (2012) 54 Cal.4th 314, 324.) A statute will not be applied retroactively unless there is clearly intent to do so. (*Id.* at p. 319; § 3 ["No part of [the Penal Code] is retroactive, unless expressly so declared."].) Proposition 64 is silent

3

as to the scope of its retroactivity beyond providing a procedure for application of a lesser punishment to persons who have already been sentenced. (See Health & Saf. Code, § 11361.8; but see *People v. Rascon* (2017) 10 Cal.App.5th 388, 394 (*Rascon*) ["Proposition 64 . . . 'is not silent on the question of retroactivity.' . . . It provides for a procedure . . . 'for application of the new lesser punishment to persons who have previously been sentenced' "].) The statute's purpose is to reduce penalties through redesignation of marijuana felonies to misdemeanors or infractions. (Ballot Pamp., Gen. Elec. (Nov. 8, 2016) text of Prop. 64, §§ 2(G) & 3, subd. (z)., pp. 179-180 (Prop. 64 Voter Materials).) Consistent with this stated purpose, Proposition 64 has been used to resentence a defendant based on the redesignated offense after a court review determines the offender does not pose a threat to public safety. (*Rascon*, at p. 394.) However, case law to date has not considered whether Proposition 64 resentencing and redesignation relate back to the original plea and conviction for purposes of DNA expungement. We conclude they do not.

Like Proposition 64, which reduces some convictions from felonies to misdemeanors "for all purposes" and some from misdemeanors to infractions "for all purposes," section 1170.18 reduces some convictions from felonies to misdemeanors "for all purposes." "[I]dentical language appearing in separate statutory provisions should receive the same interpretation when the statutes cover the same or analogous subject matter." (*People v. Cornett* (2012) 53 Cal.4th 1261, 1269, fn. 6; *People v. Rayford* (1994) 9 Cal.4th 1, 20.) Because "[t]he electorate 'is presumed to be aware of existing laws and judicial construction thereof,' " (*People v. Gonzales* (2017) 2 Cal.5th 858, 869,

4

quoting *In re Lance W.* (1985) 37 Cal.3d 873, 890, fn. 11), for guidance we look to how courts have interpreted the meaning of the phrase "for all purposes" in the context of redesignated convictions.

Proposition 47, the Safe Neighborhoods and Schools Act, reclassifies certain drug and theft felonies to misdemeanors. (§ 1170.18.) Section 1170.18, a provision added by Proposition 47, states a person who was found to have committed a felony, but "would have been guilty of a misdemeanor under [Proposition 47] . . . had [it] been in effect at the time of the offense" can request a redesignation of the felony as a "misdemeanor for all purposes" except as to restrictions to firearm ownership and possession. (§ 1170.18, subds. (a), (f), & (k).) Therefore, Proposition 47 is retroactive to the extent it is applicable to crimes committed before its passage. However, redesignation does not alter the original status of the charge as a felony, so the triggering event for the obligation to provide a DNA sample is unaffected by the later change in offense. (*In re C.H.* (2016) 2 Cal.App.5th 1139, 1147, rev. granted Nov. 16, 2016, No. S237762 (*C.H.*).)[3]

The language of redesignation in Propositions 47 and 64 is nearly identical; Proposition 64 states that a conviction that is recalled and resentenced "shall be considered a misdemeanor or infraction for all purposes." (Health & Saf. Code, § 11361.8, subd. (h).) However, the later redesignation as an infraction does not change the character of the original charge for administrative actions occurring before the

_____

[3]    We cite *C.H.* as persuasive authority pending review by the California Supreme Court. (Cal. Rules of Court, rule 8.115(e).)

5

redesignation, and the original felony guilty plea is a proper basis for collecting a DNA sample. (See *C.H., supra*, 2 Cal.App.5th at p. 1147.)

Laird's argument that voter intent supports DNA expungement is unfounded because Proposition 64 is silent on the topic of DNA. Laird contends the lack of reference to expungement means the proposition does not authorize the ongoing retention of an offender's DNA in the database. This misstates the significance of the omission. It would be improper to read anything DNA-related into Proposition 64 because we are not authorized to add text to a statute's language. (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 350.)

Proposition 64 was intended to decriminalize certain marijuana offenses by reducing sentences, dismissing marijuana-related offenses from criminal records, and prohibiting refiling of charges after prior marijuana-related convictions are reduced. (Prop. 64 Voter Materials, text of Prop. 64, § 3, subd. (z), p. 180.) To conclude DNA retention is included within the goal of reduced penalties would require us to conclude DNA collection and retention are punishments. However, DNA collection "is not punitive, does not involve concepts of retroactivity or ex post facto implications, but is confined to a simple administrative identifying procedure akin to fingerprinting or keeping ones' whereabouts known to law enforcement." (*Good v. Superior Court* (2008) 158 Cal.App.4th 1494, 1508 (*Good*); see § 299, subd. (f) [referencing the DNA sample as a "separate administrative duty"].) Because DNA collection occurs at the time of the felony arrest (§ 296.1) and is administrative (*Good*, at p. 1508; § 299, subd. (f)), the

6

redesignation to an infraction for all purposes under Proposition 64 does not relate back to the initial charge for purposes of DNA expungement.

   B. *Proposition 69 does not authorize DNA expungement*

The DNA and Forensic Identification Database and Data Bank Act of 1998 (DNA Database Act), section 295 et seq., requires qualifying persons to submit buccal swab DNA samples (§ 296, subd. (a)) and describes procedures for expunging the samples (§ 299). Proposition 69, the DNA Fingerprint, Unsolved Crime and Innocence Protection Act, amended the DNA Database Act in 2004 by expanding the pool of persons who must submit DNA samples. (*Good, supra*, 158 Cal.App.4th at p. 1498.) The DNA submission requirements "apply to all qualifying persons regardless of sentence imposed . . . and regardless of disposition rendered . . . ." (§ 296, subd. (b).) Qualifying persons include anyone who has been convicted of or who pleads guilty to a felony offense. (§ 296, subd. (a)(1).)

The plain language of section 296 creates an expectation the DNA sample will remain in the state's database because the qualifying person must submit the sample regardless of sentence or case disposition.[4] (§ 296, subd. (b).) This broad language reflects an intent to maximize the number of DNA samples. (See *Coffey v. Superior Court* (2005) 129 Cal.App.4th 809, 821 (*Coffey*).) The voter materials similarly reflect an expectation of DNA retention; opponents warned the public that "innocent people's DNA" would be stored "permanently alongside felons," which means the state's DNA

---

4      Additionally, section 296.1 requires the DNA collection at the time of the felony charge.

7

data bank could include the DNA of "many Californians *who have never committed a crime*." (Ballot Pamp., Gen. Elec. (Nov. 2, 2004), rebuttal to argument in favor of Prop. 69 & argument against Prop. 69, pp. 62-63 (Prop. 69 Voter Materials).)

Section 299 explains a person whose DNA is included "shall have his or her DNA specimen and sample destroyed and searchable database profile expunged from the databank program . . . if the person has no past or present offense or pending charge which qualifies that person for inclusion . . . and there otherwise is no legal basis for retaining the specimen or sample or searchable profile." (§ 299, subd. (a).) Additionally, "notwithstanding any other law," a judge cannot "relieve" an offender of his or her administrative duty to submit DNA if the person is found guilty of a "qualifying offense" under section 296, subdivision (a). (§ 299, subd. (f).) "[T]he use of the phrase 'relieve . . . of the separate administrative duty to provide' is not an intuitive way to refer to expungement, but the language has been so understood at least since the issuance of *Coffey*, over 10 years ago." (*In re J.C.* (2016) 246 Cal.App.4th 1462, 1475 (*J.C.*).) This is because "if a judge is not authorized to relieve a defendant of his or her administrative duty to submit DNA, the judge is not authorized to order the expungement of his or her DNA." (*In re C.B.* (2016) 2 Cal.App.5th 1112, 1127, rev. granted Nov. 9, 2016, No.

S237801 (*C.B.*);[5] *J.C.*, at p. 1472; accord *People v. Harris* (2017) 15 Cal.App.5th 47, 57, rev. granted Nov. 21, 2017, No. S244792 (*Harris*).)[6]

Taken together, sections 296 and 299 require a DNA sample from an offender who is convicted of or pleads guilty to a felony, and expungement of the sample is not permitted if the offender is guilty of a past or present qualifying offense. (§§ 296, subd. (a) & 299, subds. (a) & (f).) Subdivision (f) of section 299 places these limitations on expungement notwithstanding any other law, including sections 1170.18, 1203.4, and 1203.4a.[7]

Laird was a "qualifying person" under section 296 because he was arrested and charged with a felony offense and because he pleaded guilty to a felony offense. (See § 296, subd. (a).) The issue is whether, based on the redesignation of the offense to an infraction for all purposes, his status as a "qualifying person" is retroactively removed, meaning expungement is required because he has "no past or present offense or pending charge which qualifies [him] for inclusion within" the database. (§ 299, subd. (a).) While Laird's felony conviction was redesignated an infraction for all purposes, the retroactive impact is limited to ameliorate the punitive effects of the conviction. (See

---

[5] We include *C.B.* as persuasive authority pending review by the California Supreme Court. (Cal. Rules of Court, rule 8.1115.)

[6] We include *Harris* as persuasive authority pending review by the California Supreme Court. (Cal. Rules of Court, rule 8.1115.)

[7] Section 1170.18 was added to this nonexhaustive list in 2017 as part of Assembly Bill Number 1492 (AB 1492) after the passage of Proposition 47 and before Proposition 64. (*Harris, supra*, 15 Cal.App.5th at p. 54; *C.B., supra*, 2 Cal.App.5th at p. 1120.)

*People v. Buycks* (2018) 5 Cal.5th 857, 876, 878 (*Buycks*).) DNA collection and retention is not punitive. (*Good, supra*, 158 Cal.App.4th at p. 1508.) Thus, the redesignation has no effect on the DNA retention.

Additionally, analogous case law indicates the redesignation does not justify expungement under Proposition 69. In *J.C.*, after the felony was reduced to a misdemeanor for all purposes, the trial court denied the request for DNA expungement, concluding a felony conviction redesignated as a misdemeanor for all purposes is treated as a felony until the time of redesignation. (*J.C., supra*, 246 Cal.App.4th at pp. 1467, 1479.) The felony before redesignation is a "past offense" which qualifies for inclusion in the DNA database. (*Id.* at p. 1479.) Similarly, in *C.B.*, a juvenile offender's felony grand theft offense was redesignated to a misdemeanor under Proposition 47, but the court denied C.B.'s request for expungement of DNA records because C.B. admitted committing the felony, which meant he had a past qualifying offense. (*C.B., supra*, 2 Cal.App.5th at pp. 1115-1116, 1123-1124, discussing § 299, subd. (f).) Finally, in *Harris*, the trial court reduced the defendant's felony to a misdemeanor for all purposes, but it denied the request for DNA expungement. (*Harris, supra*, 15 Cal.App.5th at p. 52.) We concluded that the amendments to the DNA Database Act, read in conjunction with Proposition 47, prohibits DNA expungement when a felony is reduced to something less serious because the guilty plea established a qualifying offense. (*Id.* at pp. 55-56, 58-59.)

Before us now is an expungement request similar to the situation that faced the defendant in *Alejandro N. v. Superior Court* (2015) 238 Cal.App.4th 1209, superseded by

10

statute as stated in *Harris, supra*, 15 Cal.App.4th 47, in which we directed the superior court to reconsider the expungement request of a juvenile whose offense was redesignated under Proposition 47 to a misdemeanor for all purposes. (*Alejandro N.*, at pp. 1227-1230.) There is one notable difference: when we decided *Alejandro N.*, AB 1492 was not available to guide us. Laird urges us to follow our reasoning in *Alejandro N.* because we decided it before the Legislature amended section 299 to reference section 1170.18, while *Harris* was published later. He attempts to distinguish his case from the Proposition 47 cases based on the omission of Health and Safety Code section 11361.8 from the expungement statute. However, the exclusion of Health and Safety Code section 11361.8 is not determinative. The list in subdivision (f) of section 299 is nonexhaustive; " 'the words "include" and "including" are ordinarily words of enlargement, and not of limitation.' " (*People v. Wesson* (2006) 138 Cal.App.4th 959, 968, quoting *People v. Horner* (1970) 9 Cal.App.3d 23, 27.) Thus, including a specific reference to Health and Safety Code section 11361.8 is unnecessary. Moreover, the addition of section 1170.18 to subdivision (f) of section 299 clarified the Legislature's intention to limit court authorization of DNA expungement, the opposite of what Laird now seeks. (*Harris, supra*, 15 Cal.App.5th at pp. 58-59.) We read the language of the statute plainly: Health and Safety Code section 11361.8 is another law, and its existence does not separately authorize a court to expunge a DNA sample. (See § 299, subd. (f).)

Our reasoning in *Harris* applies here. Though Laird's conviction was redesignated under Proposition 64 from a misdemeanor for all purposes to an infraction for all purposes and Harris's redesignation was to a misdemeanor for all purposes, this

11

difference is meaningless for purposes of DNA expungement. Laird, like Harris, pleaded guilty to a felony, which was a "qualifying offense." For both Laird and Harris, section 299 does not authorize DNA expungement because the plea to a felony is a past qualifying offense. (§ 299, subd. (a).)

Finally, Laird argues the rule of lenity justifies DNA expungement under Proposition 64. The rule of lenity is unhelpful to Laird. It exists to " 'ensure[] that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability. [Citation.]' " (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 312-313, quoting *Liparota v. United States* (1985) 471 U.S. 419, 427.) Here there is no concern that Laird lacked warning regarding the impact of his conduct. At the time he committed the offense, Laird was lawfully required to provide a DNA sample. Additionally, he acknowledged part of his plea agreement that he would provide DNA samples under section 296.

C. *Retention of Laird's DNA sample does not violate his constitutional rights*

1. Equal protection rights

Laird contends retention of his DNA sample in the state's data bank violates federal and state equal protection clauses because he is similarly situated to persons charged with infractions, and those offenders do not provide DNA samples. We disagree.

We review an equal protection claim de novo. (*California Grocers Assn. v. City of Los Angeles* (2011) 52 Cal.4th 177, 208.) The California equal protection clause offers substantially similar protection to the federal equal protection clause. (*Manduley v.*

12

*Superior Court* (2002) 27 Cal.4th 537, 571-572.)  For a successful equal protection claim, Laird must show the state classifies two similarly situated groups in an unequal way. (*Harris, supra*, 15 Cal.App.5th at p. 60.)  We consider whether the identified groups are similarly situated for the purposes of the challenged law.  (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253; *People v. Moreno* (2014) 231 Cal.App.4th 934, 941-942 ["[A]n equal protection claim cannot succeed, and does not require further analysis, unless there is some showing that the two groups are sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction is justified."].)  Additionally, the Legislature can classify groups as different "so long as a reasonable basis for the distinction exists." (*People v. Floyd* (2003) 31 Cal.4th 179, 189-190 (*Floyd*).)

The premise of Laird's argument is that DNA samples are not collected from offenders convicted only of an infraction, and as a person now convicted of an infraction for all purposes, the collection and retention of his DNA sample means he has been treated differently.  However, Laird is not in the same class of persons as the post-Proposition 64 individuals age 18-20 who are convicted of unlawful possession of concentrated cannabis.  Laird pleaded guilty to and was convicted of a felony, which places him in a class distinct from post-Proposition 64 individuals who do not plead guilty to and are not convicted of a felony at any point in time.  The distinction is reasonable because the collection of DNA is administrative and satisfies a legitimate purpose, as we discuss *post*.  Though Laird contends that before and after Proposition 64, the penalties for the same offense are different because what was once a felony is now an

13

infraction (see Health & Saf. Code, § 11361.8), the inclusion of Laird's DNA in the state's data bank is administrative not punitive, as discussed *ante*. Thus, this distinction does not form the basis of an equal protection claim.[8]

Assuming for equal protection purposes that the two groups are similarly situated, we consider whether disparate treatment is justified. Proposition 69 provides the basis for retaining DNA and explains the purpose of collecting and maintaining an expansive DNA database as "(1) [t]he most reasonable and certain means to accomplish effective crime solving in California, to aid in the identification of missing and unidentified persons, and to exonerate persons wrongly suspected or accused of crime; [¶] (2) [t]he most reasonable and certain means to solve crime as effectively as other states which have found that the majority of violent criminals have nonviolent criminal prior convictions, and that the majority of cold hits and criminal investigation links are missed if a DNA database or data bank is limited only to violent crimes; [¶] (3) [t]he most reasonable and certain means to rapidly and substantially increase the number of cold hits and criminal investigation links so that serial crime offenders may be identified, apprehended and convicted for crimes they committed in the past and prevented from committing future crimes that would jeopardize public safety and devastate lives; and [¶]

---

[8]    Even if the DNA sample and retention requirement were treated as different penalties, there is no authority "that recognizes an equal protection violation arising from the timing of the effective date of a statute lessening the punishment for a particular offense." (*Floyd, supra*, 31 Cal.4th at p. 188.) The Legislature can "confer such benefit only prospectively." (*Id.* at pp. 189-190.) Likewise, " 'the 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time.' " (*Id.* at p. 191.)

14

(4) [t]he most reasonable and certain means to ensure that California's Database and Data Bank Program is fully compatible with, and a meaningful part of, the nationwide Combined DNA Index System (CODIS)." (Prop. 69 Voter Materials, text of Prop. 69, p. 135.)

Evaluating the analogous Proposition 47 for equal protection, the *C.H.* court explained: "Preserving the integrity and vitality of the state's DNA database system provides a rational basis to retain the DNA and profiles of offenders who were convicted before the enactment of Proposition 47, even if they would not be required to provide DNA if convicted after its effective date." (*C.H., supra*, 2 Cal.App.5th at p. 1151.) The same is true for Proposition 64; the purposes provided for collecting and retaining the DNA of all individuals who plead guilty to a felony serve a rational basis, even when those convictions are later reduced to a charge that would not have originally required DNA collection.

## 2. Privacy rights

Laird contends the collection of the DNA sample violates his Fourth Amendment protections because his DNA was collected when he was booked, without a probable cause determination and without indication, a warrantless search would be appropriate. This argument is premised on the notion that a redesignation to an infraction for all purposes means there is no authority to collect or retain a DNA sample because the redesignation relates back to the time of the plea. He also contends the retention of his DNA sample in the state's data bank violates his constitutional right of privacy under federal and state law. We find Laird's first contention unpersuasive for reasons we have

15

already discussed. Because Laird was charged with and convicted of a felony, the collection of his DNA did not violate his privacy rights. The retention of Laird's DNA sample likewise does not violate Laird's state or federal right to privacy because a balancing of the intrusion from DNA retention against legitimate, competing state interests tips the balance in favor of the state.

The Fourth Amendment to the United States Constitution and the California Constitution prohibit unreasonable searches and seizures. (U.S. Const., 4th Amend.; Cal. Const., art. I, § 13.) There is no dispute that taking a buccal swab from the inside cheek of an individual to obtain a DNA sample is a search. (*Maryland v. King* (2013) 569 U.S. 435, 446 (*King*).) Thus, the measure of constitutionality is "reasonableness." (*People v. Buza* (2018) 4 Cal.5th 658, 671 (*Buza*).) " 'Reasonableness . . . is measured in objective terms by examining the totality of the circumstances' [citation], and 'whether a particular search meets the reasonableness standard " 'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.' " ' " (*People v. Robinson* (2010) 47 Cal.4th 1104, 1120.) To determine if a search violates the Fourth Amendment, " 'we balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable.' [Citation.] This application of 'traditional standards of reasonableness' requires a court to weigh 'the promotion of legitimate governmental interests' against 'the degree to which [the search] intrudes upon an individual's privacy.' " (*King, supra*, 569 U.S. 435 at p. 448.)

16

California's Constitution expressly provides for privacy. (Cal. Const., art. I, § 13.) "The evaluation of privacy claims under our state Constitution requires (1) the identification of a specific, legally protected privacy interest, (2) a determination whether there is a reasonable expectation of privacy in the circumstances, (3) an assessment of the extent and gravity of the alleged invasion of privacy, and (4) a balancing of the invasion against legitimate and competing interests." (*Alfaro v. Terhune* (2002) 98 Cal.App.4th 492, 509.) "[T]he balancing process required by our state constitutional right of privacy is precisely the same process that other jurisdictions have applied in upholding the validity of DNA data base and data bank acts [under the Fourth Amendment]." (*Id.* at p. 509.) Thus, we evaluate whether the requirement that Laird provide the DNA sample is reasonable, balancing the intrusion to his privacy resulting from its collection and retention against the state's legitimate and competing state interests.

An individual in police custody has a diminished expectation of privacy. (*King, supra*, 569 U.S. at pp. 447-448.) The collection of a DNA sample via buccal swab is a "brief and minimal intrusion with 'virtually no risk, trauma, or pain,' [citation] [that] does not increase the indignity already attendant to normal incidents of arrest." (*Id.* at p. 438, quoting *Schmerber v. California* (1966) 384 U.S. 757, 771; *Harris, supra*, 15 Cal.App.5th at p. 64.) The DNA samples retained in the data bank are limited to markers not linked to a genetic or physical trait and used for identification purposes only. (*King*, at p. 438; *Harris*, at p. 64.) Additionally, the state's use of DNA samples is limited by statute, which permits release only to law enforcement agencies. (§ 299.5, subd. (f).) A person who knowingly uses a DNA sample for purposes other than identification or who

17

discloses the DNA to unauthorized persons for uses other than criminal identification or exclusion or to identify a missing person is subject to punishment. (§ 299.5, subd. (i)(1)(A).) These statutes create a duty to avoid unwarranted disclosures of the DNA information and thus help to ameliorate privacy concerns. (*King, supra*, 569 U.S. at p. 465.)

There are legitimate government interests served by the collection and retention of DNA samples. As we noted *ante*, Proposition 69 identified state interests in maintaining an expansive DNA database related to identification and crime solving. Additional interests include "ensuring that the custody of an arrestee does not create inordinate risks for facility staff and detainees; ensuring that persons accused of crimes are available for trial; preventing crime by arrestees by assessing the danger they pose to the public; and freeing a person wrongfully imprisoned for a crime the arrestee committed." (*Harris, supra*, 15 Cal.App.5th at p. 65.)

Laird emphasizes that DNA collection from convicted felony offenders is distinguishable from DNA collection from those convicted of an infraction, noting that case law has not held retention of DNA samples is warranted when a Proposition 64 beneficiary obtains an infraction for all purposes. But Laird's DNA collection resulted from his felony arrest and conviction, and his conviction's later reduction to an infraction for all purposes does not relate back to the original charge for purposes of administrative acts. (See *Buycks, supra*, 5 Cal.5th at pp. 876, 878.)

In *Buza* the California Supreme Court considered whether Proposition 69's DNA collection requirement is valid as applied to an individual who is "validly arrested on

18

'probable cause to hold for a serious offense' " and concluded "the requirement is valid under both the federal and state Constitutions."[9] (*Buza, supra*, 4 Cal.5th at p. 665.) The United States Supreme Court has similarly held "the initial collection of a DNA sample and its subsequent processing pursuant to CODIS procedures is, 'like fingerprinting and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment.' " (*Id.* at p. 671, quoting *King, supra*, 569 U.S. at pp. 465-466.)

Even with Laird's redesignation to an infraction for all purposes, the state's legitimate interests in the collection and retention of Laird's DNA, especially in light of "the limited scope of the DNA information collected, the strict limits on the state's use of the DNA, and the criminal punishment imposed on persons who violate those limitations," outweighs any privacy interest Laird may have in expungement. (See *Harris, supra*, 15 Cal.App.5th at p. 65.)

---

[9] The California Supreme Court declined to evaluate whether the Fourth Amendment requires expungement of an arrestee's DNA sample or identification profile after an arrest has been shown invalid or the arrestee is cleared of charges. (*Buza, supra*, 4 Cal.5th at p. 679.) However, like the defendant in *Buza*, Laird was arrested and convicted on a felony charge.

19

DISPOSITION

The order denying Laird's motion to expunge his DNA sample from the state's database is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:


AARON, J.


GUERRERO, J.

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D072642 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD256119) |
| GAVIN SCOTT LAIRD, | ORDER MODIFYING OPINION AND CERTIFYING FOR PUBLICATION |
| Defendant and Appellant. | |
| | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed August 30, 2018, be modified as follows:

1. On page 17, the first full paragraph, the first sentence and citation is deleted and replaced with the following:

California's Constitution expressly provides for privacy. (Cal. Const., art. I, § 1.)

There is no change in judgment.

The opinion was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

21

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

O'ROURKE, Acting P. J.

Copies to: All parties