Filed 10/23/20  P. v. Magana CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALEJANDRO FLORES MAGANA,<br><br>    Defendant and Appellant. | D076271<br><br><br>(Super. Ct. No. INF1501678) |


APPEAL from a judgment of the Superior Court of Riverside County, Harold W. Hopp, Judge.  Affirmed in part and remanded with directions.

Patricia Ann Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters and Julie L. Garland, Assistant Attorneys General, Robin Urbanski and Mary K. Strickland, Deputy Attorneys General, for Plaintiff and Respondent.

This is the second appeal in this case, which comes to us after we directed the trial court to resentence Alejandro Flores Magana and, among

other things, exercise its discretion under Penal Code[1] section 12022.53, subdivision (h) whether to strike firearm enhancements. (*People v. Magana* (Mar. 20, 2019, D074709) [nonpub. opn.] (*Magana*).) The court declined to strike a 25-year-to-life enhancement on one of the counts, and reimposed it in resentencing Magana.

Magana again appeals, raising mainly sentencing errors and asking for another hearing on the firearm enhancement. He contends his counsel was prejudicially ineffective at his resentencing hearing for not asking the court to modify the section 12022.53, subdivision (d) enhancement to an uncharged lesser included enhancement under section 12022.53, subdivision (b) or (c). He further contends his exclusion as a third-striker from the benefit of early youth offender parole consideration violates his constitutional right to equal protection. Finally, as to his new sentence, Magana contends the court should have stayed the sentences on counts 2 and 4 and their attached enhancements, and it also erred by imposing a 10-year prison term for a gang enhancement in addition to those for great bodily injury and use of a firearm. The People concede the latter two sentencing errors. We accept the concessions in part and remand for the court to resentence Magana as set forth below. We otherwise affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts of Magana's offenses were summarized in detail in our prior opinion (*Magana, supra,* D074709) and need not be repeated in detail here. It suffices to say that in September 2015, Magana shot a young woman in her hand, then took her vehicle. (*Magana,* D074709.)

---

[1] Undesignated statutory references are to the Penal Code.

As stated in our prior opinion,[2] Magana was convicted of carjacking (§ 215, subd. (a); count 1), assault with a firearm (§ 245, subd. (a)(2); count 2), unlawful possession of a firearm (§ 29800, subd. (a)(1); count 3), and unlawful taking or driving of a vehicle (Veh. Code, § 10851, subd. (a); count 4). Based on the jury's true findings on various allegations including his use of a firearm,[3] the court sentenced Magana to a total prison term of 31 years eight months plus 55 years to life. (*Magana*, D074709.)

Magana challenged his sentence and claimed other errors on appeal. (*Magana, supra*, D074709.) We affirmed in part, but conditionally reversed the judgment as to the count 4 car theft offense and remanded the matter with directions that the trial court permit the People to elect to retry a felony violation of Vehicle Code section 10851 or accept a reduction of that conviction to a misdemeanor. We vacated Magana's sentence and directed the court on remand to stay his sentence on counts 2 and 4 under section 654, consider whether a prior prison term enhancement was supported by sufficient jury findings, and exercise its discretion whether to (a) strike Magana's firearm enhancements; (b) impose concurrent terms on counts 2

---

[2] We granted Magana's unopposed request for judicial notice of the record in his prior appeal as well as our opinion.

[3] The jury found true allegations that in the commission of the count 1 carjacking and count 2 assault Magana personally used and intentionally discharged a firearm proximately causing great bodily injury (§§ 12022.5, subd. (a), 12022.53, subds. (b), (d), 1192.7, subd. (c)(8)) and that he personally inflicted great bodily injury on the victim (§§ 12022.7, subd. (a), 1192.7, subd. (c)(8)). The jury found true allegations that as to counts 1, 2 and 4, the offenses were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)), and as to count 1, that Magana acted as a principal for the gang's benefit (§ 12022.53, subd. (e)). It further found true that Magana had suffered a prior serious felony and strike conviction (§§ 667, subds. (a)(1), (c), (e)(1), 1170.12, subd. (c)(1)).

and 4 if not stayed; and (c) strike the five-year sentence enhancement for his prior serious felony conviction. (*Magana*, D074709.)

Following remand, the People declined to retry Magana on count 4, and the court declared that offense to be a misdemeanor. It resentenced Magana in July 2019. The court ordered Magana's count 2, 3 and 4 sentences be served concurrently to count 1, and struck both the five-year sentencing enhancement for the prior serious felony conviction and the one-year section 667.5, subdivision (b) enhancement. It declined to strike the 25-year-to-life firearm enhancement. It imposed a 55-year-to-life sentence consisting of 30 years for the count 1 carjacking, plus 25 years-to-life for the firearm enhancement attached to that count.

Magana filed this appeal.

## DISCUSSION

### I. *Ineffective Assistance of Counsel Claim*

Magana contends his counsel was prejudicially ineffective at his resentencing hearing by not asking the trial court to exercise its discretion to impose a lesser firearm enhancement under section 12022.53, subdivisions (b) or (c), which it was assertedly permitted to do under *People v. Morrison* (2019) 34 Cal.App.5th 217 (*Morrison*). According to Magana, under *Morrison*, which was decided before his resentencing hearing, the trial court could have stricken his section 12022.53, subdivision (d) enhancement and imposed a determinate term of 20 years under section 12022.53, subdivision (c), giving him a determinate 50-year term. Magana argues the court was also authorized to impose a 10-year enhancement under section 12202.53, subdivision (b) in lieu of the subdivision (d) enhancement. He maintains there was no valid strategic reason for his counsel's omission. Magana argues that because the court was not asked to consider the full range of

4

options for exercising its power under section 12022.53, subdivision (h) and did not understand the scope of its sentencing discretion, this court should remand for a new hearing.

A. *Legal Principles*

" 'An ineffective assistance claim has two components:  A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense.' [Citations.]  Whether counsel's performance was deficient, and whether any deficiency prejudiced defendant, are mixed questions of law and fact subject to our independent review." (*In re Gay* (2020) 8 Cal.5th 1059, 1073.)  " '[T]o establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness," ' as measured by ' "prevailing professional norms." ' [Citation.]  When applying this standard, we ask whether any reasonably competent counsel would have done as counsel did. [Citation.]  Counsel's performance 'is assessed according to the prevailing norms at the time.' [Citation.]  Judicial review of counsel's performance is deferential; to establish deficient performance, the defendant 'must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." ' " (*Ibid.*; see *Strickland v. Washington* (1984) 466 U.S. 668, 689 (*Strickland*).)

As to prejudice, the question is whether there is a reasonable probability that, absent counsel's errors, Magana would have obtained a more favorable result.  (*Strickland, supra*, 466 U.S. at p. 695.)  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*In re Gay, supra*, 8 Cal.5th at p. 1086.)  The reviewing "court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."

(*Strickland*, at p. 697.)  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." (*Ibid.*)

B.  *Magana Cannot Demonstrate Prejudice From His Counsel's Alleged Error*

As stated, Magana's ineffective assistance of counsel claim is based on *Morrison*, *supra*, 34 Cal.App.5th 217.  In *Morrison*, the defendant was sentenced to a 25-year-to-life term for a firearm enhancement under section 12022.53, subdivision (d), which the court reimposed after his sentence was recalled based on amendments giving the court discretion to strike those enhancements.  (*Morrison*, at p. 220.)  On the defendant's appeal, the appellate court, based on an interpretation of the scope of a court's sentencing options under section 1385 expressed in *People v. Marsh* (1984) 36 Cal.3d 134, held a court could impose a lesser enhancement under section 12022.53, subdivisions (b) or (c) in lieu of the greater enhancement, if that outcome was found to be in the interests of justice under section 1385.  (*Morrison*, at p. 223.)

Other courts have disagreed with *Morrison*'s conclusions, and the California Supreme Court has taken up the issue.  (*People v. Tirado* (2019) 38 Cal.App.5th 637, review granted November 13, 2019, No. S257658 (*Tirado*); *People v. Valles* (2020) 49 Cal.App.5th 156, review granted July 22, 2020, No. S262757; *People v. Garcia* (2020) 46 Cal.App.5th 786, review granted June 10, 2020, No. S261772; *People v. Yanez* (2020) 44 Cal.App.5th 452, review granted April 22, 2020, No. S260819.)

In *Tirado*, the court concluded a trial court that strikes a firearm enhancement under amended section 12022.53, subdivision (h) has no discretion to impose an uncharged lesser included enhancement.  (*Tirado*, *supra*, 38 Cal.App.5th at pp. 639-640, rev.gr.; see also *People v. Garcia*, *supra*,

46 Cal.App.5th at pp. 790-791, rev.gr.)  The *Tirado* court reasoned that
"[n]othing in the plain language of sections 1385 and 12022.53, subdivision
(h) authorizes a trial court to substitute one enhancement for another.
Section 12022.53, subdivision (h) uses the verbs 'strike' and 'dismiss,' and
section 1385, subdivision (a) states the court may 'order an action to be
dismissed.'  This language indicates the court's power pursuant to these
sections is binary: the court can choose to dismiss a charge or enhancement in
the interest of justice, or it can choose to take no action.  There is nothing in
either statute that conveys the power to change, modify, or substitute a
charge or enhancement." (*Tirado*, at p. 643.)  The court said such a
conclusion is "consistent with the well-settled principle that 'prosecuting
authorities, exercising executive functions, ordinarily have the sole discretion
to determine . . . what charges to bring.' " [Citation.]  . . .  [Citation.]  'The
prosecution's authority in this regard is founded, among other things, on the
principle of separation of powers, and generally is not subject to supervision
by the judicial branch.' " (*Tirado*, at p. 644.)  *Tirado* further reasoned that
had the People alleged all three enhancements under section 12022.53 and
the jury found them all true "the court would have had the discretion to
strike the section 12022.53, subdivision (d) enhancement and then either
impose one of the other two enhancements or strike them as well.  However,
because the People exercised their charging discretion to allege only one
enhancement, the trial court was limited to either imposing or striking that
enhancement." (*Tirado*, at p. 644.)  Under *Tirado*, it is only where a charged
enhancement is factually unsupported or legally inapplicable to the offense
that the court has authority to impose a lesser included enhancement.  (See
also *People v. Garcia, supra*, 46 Cal.App.5th at pp. 790-791 [agreeing with
*Tirado* that "section 12022.53, subdivision (h) does not grant a trial court the

7

discretion to substitute lesser included enhancements, at least where the greater enhancement is legally and factually valid"], 794; *People v. Yanez, supra*, 44 Cal.App.5th at pp. 458-460 [nothing in plain language of sections 1385 or 12022.53, subdivision (h) suggests the Legislature intended to grant courts sentencing discretion to impose a lesser, uncharged firearm enhancement and declining to adopt contrary interpretation on separation of powers principles], rev.gr.)

We need not decide whether *Morrison* or the *Tirado* line of cases reaches the correct result. That is because under the circumstances, any error by trial counsel in failing to ask the court to exercise discretion to impose a lesser enhancement would not result in prejudice to Magana under *Strickland*'s "reasonable probability" standard. The jury in this case was instructed and made specific findings on both the section 12022.53, subdivision (d) and section 12022.53, subdivision (b) enhancements as to count 1. Thus, the court could have exercised its discretion to strike the 25-year enhancement under section (d) and impose the 10-year section 12022.53, subdivision (b) enhancement without resorting to *Morrison*'s "lesser included" rationale. In our view, however, it is not reasonably probable the court would have done so in view of its specific finding that Magana's 55-year prison term on count one (30 years plus the 25-year enhancement) "is appropriate given the circumstance of this offense." In short, in this case, Magana cannot demonstrate he was prejudiced by any supposed error by his counsel.

## II. *Equal Protection Claim*

In 2014, the Legislature enacted laws, including section 3051, that provide a parole eligibility mechanism for juvenile offenders. (*People v.*

8

*Franklin* (2016) 63 Cal.4th 261, 277.)[4]  "[S]ection 3051 . . . requires the Board [of Parole Hearings] to conduct a 'youth offender parole hearing' during the 15th, 20th, or 25th year of a juvenile offender's incarceration.  [Citation.]  The date of the hearing depends on the offender's '[c]ontrolling offense,' which is defined as 'the offense or enhancement for which any sentencing court imposed the longest term of imprisonment.'  [Citation.]  A juvenile offender whose controlling offense carries a term of 25 years to life or greater is 'eligible for release on parole by the board during his or her 25th year of incarceration at a youth offender parole hearing, unless previously released or entitled to an earlier parole consideration hearing pursuant to other statutory provisions.'  [Citation.]  The statute excludes several categories of juvenile offenders from eligibility for a youth offender parole hearing: those who are sentenced under the 'Three Strikes' law [citation] or Jessica's Law [citation], those who are sentenced to life without parole, and those who commit another crime 'subsequent to attaining 23 years of age . . . for which malice aforethought is a necessary element of the crime or for which the

---

4      In passing these laws, the Legislature explained that " 'youthfulness both lessens a juvenile's moral culpability and enhances the prospect that, as a youth matures into an adult and neurological development occurs, these individuals can become contributing members of society.' [Citation.]  Thus, the bill's purpose was 'to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity.' [Citation.]  [¶]  To this end, section 3051 provides that an offender who committed a 'controlling offense' as a youth is entitled to a 'youth offender parole hearing' after a fixed period of years set by statute." (*In re Jenson* (2018) 24 Cal.App.5th 266, 276-277.)  Since then, the Legislature has changed the age threshold to age 23 (Stats. 2015, ch. 471, § 2) and now to age 25 (Stats. 2017, ch. 684, § 2.5, eff. Jan. 1, 2018).  (See *People v. Contreras* (2018) 4 Cal.5th 349, 381.)

individual is sentenced to life in prison.' " (*People v. Franklin*, 63 Cal.4th at pp. 277-278.)

"Section 3051 thus reflects the Legislature's judgment that 25 years is the maximum amount of time that a juvenile offender may serve before becoming eligible for parole. Apart from the categories of offenders expressly excluded by the statute, section 3051 provides all juvenile offenders with a parole hearing during or before their 25th year of incarceration. The statute establishes what is, in the Legislature's view, the appropriate time to determine whether a juvenile offender has 'rehabilitated and gained maturity' [citation] so that he or she may have 'a meaningful opportunity to obtain release' [citation]." (*People v. Franklin, supra,* 63 Cal.4th at p. 278.)

Magana was 21 years old when he committed the offenses in this case. He was sentenced to a "Two Strike" term based on his prior 2014 convictions for active participation in a criminal street gang and assault with force likely to cause great bodily injury. Under the version of section 3051 applicable when he committed the offenses, Magana's sentence makes him statutorily ineligible for a youth offender parole hearing. (Former § 3051, subd. (h) ["This section shall not apply to cases in which sentencing occurs pursuant to Section 1170.12, subdivisions (b) to (i), inclusive, of Section 667"].)

Magana contends his categorical ineligibility, as a Two Strike offender, for an early youth offender parole hearing violates his rights under the federal and state equal protection clauses. He maintains a Two Strike offender is similarly situated to any other youth offender with a sentence of over 25 years, because they are all otherwise eligible under the same statute for the same type of parole hearing, and the subdivisions defining eligibility are based on the length of the sentence and not the offense or offenses committed. Magana relies on *People v. Edwards* (2019) 34 Cal.App.5th 183,

10

in which the court held section 3051's categorical ineligibility for "One Strike" offenders had no rational basis and violated such offenders' right to equal protection, reasoning One Strike offenders are similarly situated to youths who commit intentional first degree murder who remain eligible for youth offender parole hearings even though their crimes are regarded as more culpable than the violent sex crimes falling within the One Strike law. (*Id*. at pp. 195-199.) *Edwards* concluded the carve out in section 3051, subdivision (h) was unconstitutional on its face, and remanded for the trial court to determine whether the defendants there were afforded an adequate opportunity to make a record of information relevant to a future youthful offender parole hearing. (*Id*. at pp. 199-200.) Magana similarly asks that this court remand the matter for a proceeding in which he can develop a record of evidence relevant to such a hearing.

The People respond that Magana forfeited any claim implicating his individualized circumstances, and is limited to facially challenging section 3051's exemption for those sentenced under the Three Strikes law. They argue Magana's repeated commission of serious and violent strike offenses makes him unlike any other youth offender who has not committed such offenses. The People maintain that even assuming Magana is similarly situated to juveniles who did not commit multiple strike offenses, rational basis scrutiny applies since the classifications under section 3051 are not based on race, national origin, gender or any other such suspect class, and under that test, we should reject Magana's challenge on grounds the Legislature in enacting section 3051 made a "rational, moral judgment that the public should be protected from violent serial offenders such as [Magana], and that violent serial offenders should be incarcerated for longer periods of time." The People argue *People v. Edwards*, *supra*, 34 Cal.App.5th 183 was

11

wrongly decided; that the court there "inappropriately intruded on the Legislature's prerogative to make its own policy judgment about which adult offenders are most appropriately afforded early parole consideration."[5]

We review Magana's equal protection claim—which we perceive is a facial challenge—de novo. (*People v. Laird* (2018) 27 Cal.App.5th 458, 469, citing *California Grocers Assn. v. City of Los Angeles* (2011) 52 Cal.4th 177, 208.) California's equal protection clause offers substantially similar protection to the federal equal protection clause. (*People v. Edwards, supra,* 34 Cal.App.5th at pp. 195-196.) "The concept of equal treatment under the laws means that persons similarly situated regarding the legitimate purpose of the law should receive like treatment. [Citation.] ' "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' " (*People v. Morales* (2016) 63 Cal.4th 399, 408.)

Additionally, the Legislature can classify groups as different " 'so long as a reasonable basis for the distinction exists.' " (*People v. Laird, supra,* 27

5    The California Supreme Court has taken up the equal protection issue raised in *People v. Edwards, supra,* 34 Cal.App.5th 183 as to youths convicted and sentenced for sex crimes under the One Strike law, which this court addressed in *People v. Williams* (2020) 47 Cal.App.5th 475, review granted July 22, 2020, No. S262229.) In *Williams,* a panel of this court, applying a rational basis test, rejected a One Strike defendant's equal protection challenge based on *Edwards.* (*Williams,* at pp. 490, 493.) Our colleagues disagreed with *Edwards* and held "the threat of recidivism by violent sexual offenders—as demonstrated by the Legislature's enactment of several comprehensive statutory schemes to curb such recidivism among such offenders—provides a rational basis for the Legislature's decision to exclude one-strikers from the reach of section 3051." (*Williams,* at p. 493.)

Cal.App.5th at p. 469.) "To mount a successful rational basis challenge, a party must ' "negative every conceivable basis" ' that might support the disputed statutory disparity. [Citations.] If a plausible basis exists for the disparity, '[e]qual protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic of the law.' " (*People v. Edwards*, *supra*, 34 Cal.App.5th at pp. 195-196; see also *People v. Morales*, *supra*, 63 Cal.4th at p. 408; *People v. Turnage* (2012) 55 Cal.4th 62, 74.)

Recently, in *People v. Wilkes* (2020) 46 Cal.App.5th 1159, the First District, Division Five Court of Appeal rejected a similar contention to Magana's. In *Wilkes*, the jury found the defendant guilty of, among other offenses, attempted murder and found true an allegation it was committed willfully, deliberately and with premeditation. (*Id*. at pp. 1163-1164.) The defendant admitted prior conviction allegations and the court sentenced him under the Three Strikes law to a prison term of 59 years four months to life. (*Id*. at p. 1164.) On appeal, the defendant, who was 25 years old when he committed the offenses, argued the differential treatment of Three Strikes youth offenders violated his right to equal protection; that he was similarly situated to youth offenders who were not sentenced pursuant to the Three Strikes law, and there was no rational basis for the different treatment. (*Id*. at pp. 1164-1165.)

The *Wilkes* court disagreed: "Numerous courts have rejected equal protection challenges to the differential treatment of Three Strikes offenders, concluding that such offenders are not similarly situated to non-recidivist offenders and/or that a rational basis exists to treat them differently. As one such court reasoned: 'A person who has committed and been convicted of two serious or violent felonies before the instant offense is a recidivist who has engaged in significant antisocial behavior and who has not benefited from the

13

intervention of the criminal justice system . . . . It is reasonable for the Legislature to distinguish between those felons . . . who come to court with a history of serious or violent felony convictions and those who do not.' [Citations.] [¶] The reasoning of these cases applies here. The purpose of section 3051 is 'to give youthful offenders "a meaningful opportunity to obtain release" after they have served at least 15, 20, or 25 years in prison (§ 3051, subd. (e)) and made " 'a showing of rehabilitation and maturity' " and 'to account for neuroscience research that the human brain—especially those portions responsible for judgment and decisionmaking—continues to develop into a person's mid-20s.' [Citation.] Assuming a Three Strikes youth offender is similarly situated to other youth offenders for purposes of section 3051, the Legislature could rationally determine that the former—'a recidivist who has engaged in significant antisocial behavior and who has not benefited from the intervention of the criminal justice system' [citation]— presents too great a risk of recidivism to allow the possibility of early parole." (*People v. Wilkes*, *supra*, 46 Cal.App.5th at pp. 1165-1166, citing *People v. Cooper* (1996) 43 Cal.App.4th 815, 829; *People v. Kilborn* (1996) 41 Cal.App.4th 1325, 1332 ["The system of imposing greater punishment on *all* persons who commit a felony-grade crime after having committed one or more serious or violent felonies in the past, is rationally related to the legitimate public objective of discouraging recidivism"]; *People v. Spears* (1995) 40 Cal.App.4th 1683, 1687 ["It is clear the Legislature intended to set appellant and other recidivists with prior 'strike' convictions apart from first time offenders and those with less serious criminal histories; it is equally clear it did so with a legitimate objective in mind"]; *People v. McCain* (1995) 36 Cal.App.4th 817, 820 ["The Legislature has seen fit to increase the severity of punishment for recidivists who have committed serious or violent felonies

14

and who again commit felony offenses . . . . [W]e cannot say harsher treatment for such recidivists is irrational or arbitrary such that it denies them equal protection under the law"].)

*Wilkes* pointed out that a distinguishing characteristic of Three Strikes offenders, unlike the defendant sentenced for sex offenses under the One Strike law in *People v. Edwards*, *supra*, 34 Cal.App.5th 183, is that they are not being sentenced for a first-time offense. (*People v. Wilkes*, *supra*, 46 Cal.App.5th at p. 1166 [" 'The "One Strike" law is an alternative, harsher sentencing scheme that applies to specified felony sex offenses,' such that ' "a first-time offense can result in one of two heightened sentences" ' "].) "Thus, the ample authority rejecting equal protection challenges from Three Strikes offenders did not apply in *Edwards*," where the court "took pains to 'note that criminal history plays no role in defining a One Strike crime' and that '[t]he problem in this case is' the categorical exclusion of 'an entire class of youthful offenders convicted of a crime short of homicide . . . , *regardless of criminal history . . . .*' " (*People v. Wilkes*, at pp. 1166-1167, quoting *Edwards*, at p. 199.)

We follow *Wilkes*'s reasoning to reject Magana's equal protection arguments. We cannot agree that Magana—who has committed repeat serious or violent felonies—is similarly situated to other youth offenders without strike priors but with sentences over 25 years for purposes of the law. Further, we see "a rational relationship between the disparity of treatment and some legitimate governmental purpose." (*Heller v. Doe* (1993) 509 U.S. 312, 320; see also *People v. Turnage*, *supra*, 55 Cal.4th at p. 74 [equal protection is denied only where there is no rational relationship between the disparity of treatment and some legitimate governmental purpose].) " '[W]hen conducting rational basis review, we must accept any

15

gross generalizations and rough accommodations that the Legislature seems to have made.' [Citation.] 'A classification is not arbitrary or irrational simply because there is an "imperfect fit between means and ends" ' [citation], or 'because it may be "to some extent both underinclusive and overinclusive" ' [citation]." (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 887.) As stated, the law will "survive[] constitutional scrutiny as long as there is " 'any reasonably conceivable state of facts that could provide a rational basis for' " treating the youthful offenders differently. (*People v. Turnage*, at p. 74.)

These principles require that we reject Magana's assertions that exclusion of Third Strikers violates the holdings in *Graham v. Florida* (2010) 560 U.S. 48, *Miller v. Alabama* (2012) 567 U.S. 460 and *People v. Caballero* (2012) 55 Cal.4th 262, which curtailed imposition of life without parole sentences for juvenile offenders on Eighth Amendment grounds. The Legislature plainly accounted for these decisions when it enacted section 3051. (See *People v. Franklin*, *supra*, 63 Cal.4th at p. 268 [the Legislature enacted sections 3051 and 4801 "to bring juvenile sentencing in conformity with *Miller*, *Graham*, and *Caballero*"]; see Legis. Counsel's Dig., Sen. Bill No. 260, Stats. 2013, ch. 312, § 4 ["This bill would exempt from its provisions inmates who were sentenced pursuant to the Three Strikes law"].) "At bottom, the Legislature is afforded considerable latitude in defining and setting the consequences of criminal offenses." (*Johnson v. Department of Justice*, *supra*, 60 Cal.4th at p. 887.) We agree the Legislature's treatment of youths sentenced under the Three Strikes law like Magana so as to exclude them from the benefit of early parole consideration is rationally related to the legitimate governmental objective of discouraging recidivism. (*People v. Kilborn*, *supra*, 41 Cal.App.4th at p. 1332.) We cannot say in view of these

16

legislative concerns that the different treatment here so lacks rationality that it constitutes a denial of equal protection. (*Ibid.*)

### III. *Sentencing Errors*

#### A. *Sentences on Counts 2 and 4*

Magana contends the concurrent sentences imposed by the court on counts 2 and 4 should have been stayed pursuant to section 654 in accordance with this court's prior opinion. The People concede the point, and we agree our direction that the court stay counts 2 and 4 under section 654 (*Magana, supra*, D074709) requires that result.

#### B. *Prison Term for Gang Enhancement on Count 2*

The trial court sentenced Magana to a total term of 23 years on count 2, consisting of six years for the assault with a firearm (the midterm of three years doubled for the prior strike), plus ten years on the jury's finding Magana committed the crime to benefit a criminal street gang (§ 186.22, subd. (b)(1)(C)), plus four years on the jury's finding he personally used a firearm (12022.5, subd. (a)), plus three years on the jury's finding he inflicted great bodily injury (12022.7, subd. (a)). (See footnote 3, *ante*.)

Magana contends the trial court imposed an unauthorized sentence by sentencing him to the 10-year gang enhancement and at the same time imposing prison terms for the gun use and great bodily injury enhancements. He explains that the assault conviction was deemed a violent felony under section 667.5, subdivision (c)(8) given either his firearm use or infliction of great bodily injury, thus increasing his sentence for the gang enhancement to a ten-year term under section 186.22, subdivision (b)(1)(C). Pointing out the record does not reflect which enhancement the court selected to elevate the gang enhancement, Magana argues the sentence violates section 1170.1, subdivisions (f) and (g), which prohibit imposition of multiple enhancements

17

using the same aggravating factor[6] and we should direct the trial court to restructure the sentence accordingly.

The People concede error and agree that this court should remand the matter with directions that the trial court clarify which factor (firearm use or infliction of great bodily injury) it used to elevate the count 2 assault to a violent felony, and strike the additional enhancement for that factor consistent with section 1170.1.

We accept the concession in part. A court's failure to comply with section 1170.1 can give rise to a claim that a sentence is legally unauthorized. (See *People v. Bradley* (1998) 64 Cal.App.4th 386, 390-391.) Magana's assault conviction qualified as a violent felony under section 667.5, subdivision (c) either because he used a firearm (§ 12022.5) or inflicted great bodily injury on a person other than an accomplice (§ 12022.7). (§ 667.5, subd. (c)(8); accord, *People v. Rodriguez* (2009) 47 Cal.4th 501, 508-509 [use of firearm during assault made defendant eligible for 10-year gang enhancement, thus his sentence could not be enhanced both for firearm use (§ 12022.5) and for committing the violent felony to benefit a criminal street gang (§ 186.22, subd

---

[6] Section 1170.1, subdivision (f) provides: "When two or more enhancements may be imposed for being armed with or using a dangerous or deadly weapon or a firearm in the commission of a single offense, only the greatest of those enhancements shall be imposed for that offense. This subdivision shall not limit the imposition of any other enhancements applicable to that offense, including an enhancement for the infliction of great bodily injury." Subdivision (g) of that section provides: "When two or more enhancements may be imposed for the infliction of great bodily injury on the same victim in the commission of a single offense, only the greatest of those enhancements shall be imposed for that offense. This subdivision shall not limit the imposition of any other enhancements applicable to that offense, including an enhancement for being armed with or using a dangerous or deadly weapon or a firearm."

18

(b)(1)(C))]; see also *People v. Le* (2015) 61 Cal.4th 416, 425.)  The court in *People v. Le* explained that the gang statute mandates punishment depending on the severity of the felony offense, thus here, the court was required to sentence Magana under subdivision (b)(1)(C) of section 186.22. (*People v. Le*, at pp. 422-423.)  Under *Rodriguez*, 47 Cal.4th 501, depending on which sentencing factor it used to elevate the assault to a violent felony, the trial court could not impose *and execute* either the great bodily injury enhancement or the firearm enhancement.  (See *People v. Gonzalez* (2009) 43 Cal.4th 1118, 1123.)

However unlike *Rodriguez*, *supra*, 47 Cal.4th 501, here, the trial court will be staying the sentence on count 2 (and related enhancements) completely under section 654.  This is where we part with the People's concession.  In *People v. Gonzalez*, *supra*, 43 Cal.4th 1118, the California Supreme Court considered section 12022.53, subdivision (f), which provides, similar to section 1170.1, that when " 'more than one enhancement per person is found true under this section, the court shall *impose* upon that person the enhancement that provides the longest term of imprisonment.' " (*Gonzalez*, at p. 1125.)  The question was whether that provision required that the enhancements providing shorter terms of imprisonment must be stayed or stricken.  (*Id*. at p. 1124.)  The court concluded that "the remaining section 12022.53 firearm enhancements and any section 12022.5 firearm enhancements that were found true for the same crime must be imposed and then stayed."  (*Gonzalez,* at p. 1123.)  It explained that the use of the word "impose" in section 12022.53, subdivision (f), had to mean "impose and then execute" to best harmonize the statute internally.  (*Gonzalez,* at p. 1126.) Thus *Gonzalez* held that section 12022.53, subdivision (f), "directs that only one enhancement may be imposed and then *executed* per person for each

19

crime, and allows a trial court to impose and then *stay* all other prohibited enhancements." (*Id*. at p. 1127.) The court also noted that the rationale underlying that rule and section 654—preservation of the possibility that a stayed portion of a sentence could be imposed if the unstayed portion is reversed on appeal—also was served by its construction of section 12022.53, subdivision (f). (*Gonzalez*, at pp. 1128-1129.)

More recently in *People v. Le, supra*, 61 Cal.4th 416, the court, applying *Rodriguez, supra*, 47 Cal.4th 501, implicitly endorsed *Gonzalez*'s impose-and-stay procedure. The defendant in *Le* was convicted of assault with an automatic firearm (§ 245, subd. (b)), and the jury found true allegations that he personally used a firearm (§ 12022.5, former subd. (a)(1)) and committed the offense for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). (*Le*, at p. 420.) At the sentencing hearing, the parties contested whether *Rodriguez* applied. (*Le*, at p. 421.) The trial court ruled that "under *Rodriguez*, it could not impose terms for both enhancements because the jury's findings made defendant's assault a violent felony under section 667.5, thereby making the applicable enhancement the same 10-year term under section 186.22, subdivision (b)(1)(C)" and accordingly "imposed the 10-year term for that enhancement, but stayed any sentence enhancement under section 12022.5, subdivision (a)." (*Le*, at pp. 421, 422 .) The Court of Appeal affirmed the lower court's imposition and stay of the section 12022.5 enhancement. (*Le,* at p. 422.) The Supreme Court likewise affirmed, while simultaneously holding that "a trial court is precluded from imposing both a firearm enhancement under section 12022.5, subdivision (a)(1) and a serious felony gang enhancement under section 186.22, subdivision (b)(1)(B) when the crime qualifies as a serious felony solely because it involved firearm use." (*Le*, 61 Cal.4th at p. 429.) Thus, it concluded that enhancements are not

20

impermissibly double-counted where any duplicative enhancement is imposed and stayed. (Accord, *People v. Vega* (2013) 214 Cal.App.4th 1387, 1395-1396 [jury found defendant personally inflicted great bodily injury in commission of crime (§ 12022.7, subd. (a)), and also committed it on behalf of a criminal street gang; Court of Appeal held trial court should have imposed and then stayed execution of the section 12022.7, subdivision (a) enhancement].)

Following the reasoning articulated above, the trial court in this case may impose and stay any duplicative sentencing enhancement; it need not strike the duplicate enhancement so as to comply with section 1170.1, subdivision (f) or (g).[7]


## DISPOSITION

The matter is remanded for another sentencing hearing in which the trial court on count 2 shall clarify its sentencing choices and apply section

---

[7] California Rules of Court, rule 4.447 also compels this result. That rule provides: "A court may not strike or dismiss an enhancement solely because imposition of the term is prohibited by law or exceeds limitations on the imposition of multiple enhancements. Instead, the court must: (1) Impose a sentence for the aggregate term of imprisonment computed without reference to those prohibitions or limitations; and (2) Stay execution of the part of the term that is prohibited or exceeds the applicable limitation. The stay will become permanent once the defendant finishes serving the part of the sentence that has not been stayed." (Cal. Rules of Court, rule 4.447.) "This rule is intended 'to avoid violating a statutory prohibition or exceeding a statutory limitation, while preserving the possibility of imposition of the stayed portion should a reversal on appeal reduce the unstayed portion of the sentence.'" (*People v. Lopez* (2004) 119 Cal.App.4th 355, 364 [addressing former Cal. Rules of Court, rule 4.447].)

1170.1, subdivision (f) or (g), as explained in *People v. Rodriguez*, *supra*, 47 Cal.5th 501 and *People v. Le*, *supra*, 61 Cal.4th 416, then stay under section 654 Magana's sentences on counts 2 and 4.  The court shall forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects the judgment is affirmed.


                                                              O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


DATO, J.