Filed 2/23/21(review denied 6/9/21; reposted with Supreme Court order and statement)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSEPH LEON JACKSON,<br><br>    Defendant and Appellant. | D077095<br><br><br><br>(Super. Ct. No. SCD127034) |

APPEAL from an order of the Superior Court of San Diego County, Michael T. Smyth, Judge. Affirmed.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Randall Einhorn and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Joseph Leon Jackson sought a youth offender parole hearing under Penal Code[1] section 3051 as a result of his conviction in 1998 that included two counts of first degree murder with multiple special circumstances, which counts resulted in a sentence of two consecutive terms of life without the possibility of parole (LWOP).  Defendant was 19 years old when he committed the homicides.  In his October 2019 motion, defendant argued section 3051 violated his equal protection rights because he allegedly "is entitled to the same protections as any other person who violated the law at the same age whether it was murder without special circumstances, robbery, kidnapping or any other crime."  The trial court in November 2019 denied the motion, finding that defendant was statutorily ineligible for relief and that there was a rational basis for carving out from section 3051 offenders such as defendant who are convicted of first degree special circumstance murder and sentenced to LWOP.

On appeal, defendant asserts section 3051's exclusion of persons over 18 years of age with LWOP sentences from its parole hearing provisions violates the constitutional guarantee of equal protection.  As we explain, we independently conclude the carve out to section 3051 for offenders such as defendant serving a LWOP sentence for special circumstance murder is not an equal protection violation.

FACTUAL AND PROCEDURAL OVERVIEW

On the evening of January 30, 1997, defendant shot and killed Charles (Charles) Downing and Linda Lewis.  He also shot James Robinson in the chest and Sonja (Sonja) Downing in the right and left thigh.  Both Robinson and Sonja survived.  All of the victims were inside an apartment that defendant and two accomplices entered at about 10:00 p.m., after learning

---

[1]     All additional statutory references are to the Penal Code.

earlier that evening that Charles was selling cocaine from the apartment. Once inside, defendant asked about the drugs while announcing, "This is a robbery." As noted, defendant was 19 years old when he committed the crimes.

In 1998, a jury convicted defendant of two counts of first degree murder (§ 187, subd. (a); counts 2 & 3); three counts of attempted premeditated murder (§ 187, subd. (a) & former § 664; counts 4, 6 & 8); five counts of attempted first degree robbery (§§ 211, 213, subd. (b) & 664; counts 10-14); one count of residential burglary (§ 459; count 15); three counts of assault with a semi-automatic firearm (former § 245, subd. (b); counts 5, 7 & 9), and one count of conspiracy to commit robbery (former § 182, subd. (a)(1); count 1).

As to both murder counts, the jury found true the special circumstances of multiple murder (former § 190.2, subd. (a)(3)); murder during an attempted robbery (*id.*, subd. (a)(17)); and murder during a first degree burglary (*ibid.*). The jury also found true the allegations as to all counts that defendant was armed with a firearm (former § 12022, subd. (a)(1)), and that he personally used a firearm (former § 12022.5, subd. (a)(1)). As to counts 4 through 7, 10 through 13, and 15, the jury found true the allegation that defendant inflicted great bodily injury on a nonaccomplice (former § 12022.7, subd. (a)). The People sought the death penalty for defendant, but the jury was unable to unanimously agree on the penalty and the People did not seek a retrial on the issue.

As noted, the trial court sentenced defendant to two consecutive terms of LWOP. Defendant also was sentenced to three consecutive terms of life with the possibility of parole, plus a determinate term of 27 years four months. Defendant appealed. After striking a parole revocation fine, this

3

court in January 2001 affirmed the judgment in defendant's direct appeal. (See *People v. Bowman et al.* (Jan. 19, 2001, D032440) [nonpub. opn.].)[2]

As also noted, the trial court in November 2019 denied defendant's motion seeking a youth offender parole hearing pursuant to section 3051, based on his argument that exclusion of offenders between the ages of 18 and 25 sentenced to LWOP is a violation of equal protection laws.

DISCUSSION

A. *Youth Offender Parole Hearings*

Enacted in 2013, the Legislature intended in section 3051 et seq. to " 'establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity . . . .' " (*In re Trejo* (2017) 10 Cal.App.5th 972, 980 (*Trejo*).) Section 3051 therefore provides for youth offender parole hearings that guarantee youth offenders a meaningful opportunity for release on parole. (§ 3051, subd. (e).) Youth offenders who committed their "controlling offense" prior to reaching a specified age are entitled to a parole hearing after serving a designated period in custody. (*Id.*, subd. (b).) A " 'controlling offense' " is defined as "the offense or enhancement for which any sentencing court imposed the longest term of imprisonment." (*Id.*, subd. (a)(2)(B).)

As originally enacted, section 3051 applied where the controlling offense was committed before the offender was 18 years old. (*Trejo, supra*, 10 Cal.App.5th at p. 981 & fn. 6.) By amendment effective January 1, 2016, the

---

**2**     Defendant was tried and convicted along with codefendants Deaundre Louis Bowman and Kevin Markeith Sumner. Neither Bowman nor Sumner are parties to this appeal.

Legislature extended the availability of youth offender parole hearings to offenders who were under 23 years old when they committed their controlling offenses. (Stats. 2015, ch. 471 (Sen. Bill No. 261), § 1, eff. Jan. 1, 2016; see *Trejo*, at p. 981 & fn. 6.) By subsequent amendments, the Legislature further extended the availability of youth offender parole hearings to offenders who were 25 years old or younger when they committed their controlling offenses. (Stats. 2017, ch. 684 (Sen. Bill No. 394), § 3051, eff. Jan. 1, 2018.)

Under section 3051 "an offender who committed a 'controlling offense' under the age of 26 is entitled to a 'youth offender parole hearing' during his or her 15th year of incarceration if he [or she] received a determinate sentence; during his or her 20th year of incarceration if he or she received a life term of less than 25 years to life; and during his or her 25th year of incarceration if he or she received a term of 25 years to life. (§ 3051, subd. (b)(1)-(3).) An offender convicted of a controlling offense committed before the age of 18 for which he or she was sentenced to LWOP is entitled to a youth offender parole hearing during his or her 25th year of incarceration. (§ 3051, subd. (b)(4).)" (*In re Jenson* (2018) 24 Cal.App.5th 266, 277.)

Subdivision (h) of section 3051 includes various exceptions to a person's right to a youth offender parole hearing. It provides in part: "This section shall not apply to cases in which sentencing occurs pursuant to Section 1170.12, subdivisions (b) to (i), inclusive, of Section 667, or Section 667.61,[3] or to cases in which an individual is sentenced to life in prison without the

---

**3** Our high court granted review of this court's opinion in *People v. Williams* (2020) 47 Cal.App.5th 475, review granted July 22, 2020, S262191, on whether subdivision (h) of section 3051 violates equal protection of the laws by excluding from youth offender parole consideration young adults convicted and sentenced for serious sex crimes under the One Strike law (§ 667.61), while young adults convicted of first degree murder are entitled to such consideration.

possibility of parole for a controlling offense that was committed *after the person had attained 18 years of age*." (§ 3051, subd. (h), italics added.)

Defendant recognizes he is statutorily ineligible for relief under the plain language of subdivisions (b)(4) and (h) of section 3051, as he was 19 years old when he committed the homicides and was subsequently sentenced to two consecutive LWOP terms as a result. Accordingly, he argues he is entitled to a youth offender parole hearing because section 3051 denies his right to equal protection of the laws in two ways: (1) it grants a youth offender parole hearing to persons under the age of 18 sentenced to LWOP, but denies such a hearing to persons 18 to 25 years old sentenced to LWOP; and (2) it grants a youth offender parole hearing to persons 25 years of age or younger who are convicted of first degree murder but not sentenced to LWOP, but denies such relief to persons 18 to 25 years old convicted of murder but sentenced to LWOP.

B. *Guiding Principles*

We independently review defendant's challenge to section 3051. (See *People v. Ramos* (1997) 15 Cal.4th 1133, 1154.) Both the Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution guarantee to all persons the equal protection of the laws. The right to equal protection of the laws is violated when "the government . . . treat[s] a [similarly situated] group of people unequally without some justification." (*People v. Chatman* (2018) 4 Cal.5th 277, 288; *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 568.) "The California equal protection clause offers substantially similar protection to the federal equal protection clause." (*People v. Laird* (2018) 27 Cal.App.5th 458, 469.)

" ' "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner."

[Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' " (*People v. Morales* (2016) 63 Cal.4th 399, 408.)

Where our Legislature fixes different punishments for different crimes, those differences do not violate equal protection unless the challenges show "there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.' " (*People v. Turnage* (2012) 55 Cal.4th 62, 74 (*Turnage*); *People v. Wilkinson* (2004) 33 Cal.4th 821, 838 (*Wilkinson*).) "This so-called 'rational basis' scrutiny is exceedingly deferential: A law will be upheld as long as a court can 'speculat[e]' any rational reason for the resulting differential treatment, regardless of whether the 'speculation has "a foundation in the record," ' regardless of whether it can be 'empirically substantiated,' and regardless of whether the Legislature ever 'articulated' that reason when enacting the law." (*People v. Love* (2020) 55 Cal.App.5th 273, 287, quoting *Turnage,* at pp. 74–75 and *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881; see also *People v. Edwards* (2019) 34 Cal.App.5th 183, 195–196 (*Edwards*) [recognizing that to "mount a successful rational basis challenge, a party must ' "negative every conceivable basis" ' that might support the disputed statutory disparity," quoting *Heller v. Doe* (1993) 509 U.S. 312, 320 (*Heller*), and that "[i]f a plausible basis exists for the disparity, '[e]qual protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic of the law' "], quoting *Turnage*, *supra*, at p. 74.)

We separately examine each of defendant's equal protection arguments.

C. *Disparate Treatment of Youth Offenders and Juveniles Sentenced to LWOP*

As noted, defendant argues that section 3051 violates equal protection because it treats youthful offenders (i.e., those 18 to 25 years old) who commit

7

murder and are sentenced to LWOP differently than juveniles (i.e., those under 18 years of age) who commit murder and receive the same sentence. As also noted, under the statute the former are not entitled to a youth offender parole hearing while the latter are. (§ 3051, subds. (b)(4) & (h).) For purposes of this particular analysis, we will assume defendant has shown that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. (See *Wilkinson, supra*, 33 Cal.4th at p. 836.)

We conclude defendant's equal protection challenge to this classification lacks merit because both the United States Supreme Court and our high court have repeatedly found the bright-line drawn between juveniles and nonjuveniles to be a rational one when it comes to criminal sentencing. (*Miller v. Alabama* (2012) 567 U.S. 460, 471 (*Miller*) ["children are constitutionally different from adults for purposes of sentencing"]; *Roper v. Simmons* (2005) 543 U.S. 551, 574 (*Roper*) ["The age of 18 is the point where society draws the line for many purposes between childhood and adulthood"]; *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1380 [the age of 18 "is the line the [United States Supreme Court] has drawn in its Eighth Amendment jurisprudence"]; *People v. Gamache* (2010) 48 Cal.4th 347, 405 ["We previously have rejected the argument that a death penalty scheme that treats differently those who are 18 years of age and older, and those younger than 18, violates equal protection"].)

In support of his equal protection argument, defendant relies on *Edwards, supra*, 34 Cal.App.5th at page 183. In *Edwards*, the First District Court of Appeal addressed equal protection and the application of section 3051 to one-strike offenders sentenced pursuant to section 667.61. The *Edwards* court concluded equal protection required one-strike offenders be afforded a youth offender parole hearing under section 3051, finding

unconstitutional the carve out of such offenders in subdivision (h) of that statute. (*Edwards*, at p. 197.) In reaching its conclusion, the *Edwards* court found "no rational relationship between the disparity of treatment [of one-strike offenders] and a legitimate governmental purpose" (*ibid.*), noting that section 3051 included "first degree murderers but exclude[d] One Strikers." (*Edwards*, at p. 195.)

In its decision, the *Edwards* court relied heavily on *People v. Contreras* (2018) 4 Cal.5th 349 (*Contreras*). In *Contreras*, our high court held the Eighth Amendment's ban on cruel and unusual punishment was violated by the imposition of sentences of 50 years to life, and 58 years to life, on two 16-year-old nonhomicide offenders. (*Id.* at p. 356.) In support of its holding, *Contreras* in turn relied on United States Supreme Court authority including *Miller*, *supra*, 567 U.S. at page 460, *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*), and *Roper*, *supra*, 543 U.S. at page 560. From such authority, *Contreras* recognized that the Eighth Amendment "impose[d] unique constraints on the sentencing of juveniles who commit serious crimes" (*Contreras*, at p. 359); and that children therefore " 'are constitutionally different from adults for purposes of sentencing.' " (*Ibid.*, quoting *Miller*, at p. 471.)

Our high court in *Contreras* in particular relied on the Supreme Court's *Graham* decision—a case involving a 17-year-old defendant who was sentenced in Florida to LWOP for a nonhomicide offense—in discussing the sentencing differences between juvenile and adult offenders: "Central to the high court's analysis was its 'consideration of the culpability of the [juvenile] offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question.' (*Graham*, *supra*, 560 U.S. at p. 67.) As for culpability, the high court reiterated its observations in *Roper* that '[a]s compared to adults, juveniles have a " 'lack of maturity and an

9

underdeveloped sense of responsibility' "; they "are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure"; and their characters are "not as well formed." [Citation.] These salient characteristics mean that "[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." ' (*Graham*, at p. 68, quoting *Roper*, *supra*, 543 U.S. at pp. 569–570, 573.)" (*Contreras*, *supra*, 4 Cal.5th at pp. 365–366.)

We find *Edwards* reliance on *Contreras* misplaced for two reasons. First, *Contreras* involved a constitutional challenge to LWOP sentences under the Eighth Amendment's prohibition of cruel and unusual punishment. *Contreras* did not analyze whether such sentences violated the equal protection clause, as the opinion expressly recognized. (*Contreras*, *supra*, 4 Cal.5th at p. 382.)

Second, and perhaps more important to the instant case, *Contreras* only addressed the constitutional implications of *juvenile* offenders sentenced to LWOP. That is not our case here, as defendant Jackson was a 19-year-old *adult* when he committed the two first degree murders leading to two consecutive LWOP sentences. Thus, the "unique constraints" (*Contreras*, *supra*, 4 Cal.5th at p. 359) and " 'constitutionally different' " standards (*ibid.*, quoting *Miller*, *supra*, 567 U.S. at p. 471) applicable to juvenile offenders sentenced to LWOP are inapposite in the instant case. For these reasons, we do not find *Contreras* to be controlling, or *Edwards* to be persuasive, authority on our case.

Moreover, we also find *Edwards* inapposite here because unlike the defendant in that case, our defendant is unable to point to any more serious offense for which section 3051 provides relief. As *Edwards* itself notes, "there

10

is no crime as horrible as intentional first degree murder" and "case law has long distinguished between such murders and other crimes against persons, reserving the most draconian sentences for murderers alone." (*Edwards*, *supra*, 34 Cal.App.5th at p. 197; see *Contreras*, *supra*, 4 Cal.5th at p. 382 ["The parties point to no other provision of our Penal Code, and we are aware of none, that treats a nonhomicide offense more harshly than special circumstance murder"].) As there is no crime more serious than the special circumstance murders defendant committed in 1998, much less one for which section 3051 permits relief, we conclude for this separate reason that *Edwards* does not support defendant's equal protection claim.

D. *Disparate Treatment of Youthful Offenders Convicted of First Degree Murder*

Defendant next argues that section 3051 violates equal protection of the laws because it treats youthful offenders convicted of first degree murder differently than youthful offenders who are sentenced to LWOP; the former are entitled under the statute to a youth offender parole hearing, while the latter are not. Because a person is eligible for LWOP only if he or she has committed first degree murder (§ 190.2), both classifications involve youthful offenders convicted of first degree murder.

But those sentenced to LWOP have *also* been found, beyond a reasonable doubt, to have committed that first degree murder under one—or as in this case, more than one—of the special circumstances that reflect that the particular first degree murder was in some manner aggravated or reflected a greater risk of harm to persons other than the immediate murder victim or victims. (See § 190.2, subds. (a)(1)–(a)(22); *People v. Horning* (2004) 34 Cal.4th 871, 907.) As a result, youthful offenders who have been sentenced to LWOP have committed an aggravated form of first degree murder that distinguishes them from youthful offenders who have committed

11

first degree murder but done so in the absence of any such aggravating factors.

Consequently, we independently conclude the two groups of first degree murderers are not similarly situated. (*In re Williams* (2020) 57 Cal.App.5th 427, 435–436 (*Williams*) [rejecting the argument that "youth offenders sentenced to LWOP and those youth offenders sentenced to parole-eligible life terms are similarly situated with respect to the Legislature's first goal, which is to calibrate sentences in accordance with youthful offenders' diminished culpability," and noting that "[w]hile a 21-year-old *special circumstance* murderer may, in fact, have diminished culpability compared with a 28 year old who commits the same crime, he [or she] is nonetheless *more* culpable and has committed a more serious crime than a 21 year old convicted of a *nonspecial circumstance* murder" for purposes of equal protection]; see also *In re Jones* (2019) 42 Cal.App.5th 477, 481 [in which the majority concluded that "[b]ecause LWOP offenders who were between the ages of 18 and 25 when they committed their offenses are adult offenders, they are not similarly situated to juvenile offenders described in section 1170(d)(2)"]; *People v. Jacobs* (1984) 157 Cal.App.3d 797, 803 [recognizing that " '[p]ersons convicted of different crimes are not similarly situated for equal protection purposes,' " italics omitted].)

And, assuming arguendo we accept defendant's contention that all murderers are similarly situated vis-à-vis section 3051's desire to allow all youthful offenders the opportunity to show that they have reformed, in our view the difference in the underlying crimes, and the fact that special circumstance murder is punished more harshly, provide a rational reason for distinguishing between the two groups of first degree murderers. (*Williams*, *supra*, 57 Cal.App.5th 427, 435–436; accord, *Contreras*, *supra*, 4 Cal.5th at

p. 382 [noting that "special circumstance murder" is sentenced most "harshly"]; *People v. Blackwell* (2016) 3 Cal.App.5th 166, 202 [noting that "[f]irst degree special circumstance murder, viewed in the abstract, is perhaps the most serious offense under California law. . . ."]; *People v. Acosta* (Feb. 9, 2021, G057136) __ Cal.App.5th __ 2021 LEXIS 116, at p. *16 [noting the severity of the crime committed provides a "rational basis for distinguishing between a young adult LWOP offender and a young adult offender serving a non-LWOP sentence"].)

" 'It is the prerogative, indeed the duty, of the Legislature to recognize degrees of culpability when drafting a Penal Code.' [Citation.] . . . 'The decision of how long a particular term of punishment should be is left properly to the Legislature. The Legislature is responsible for determining which class of crimes deserves certain punishments and which crimes should be distinguished from others. As long as the Legislature acts rationally, such determinations should not be disturbed.' [Citation.]" (*Wilkinson*, *supra*, 33 Cal.4th at p. 840; see *In re Lynch* (1972) 8 Cal.3d 410, 414 [noting it is the "function of the legislative branch to define crimes and prescribe punishments, and . . . such questions are in the first instance for the judgment of the Legislature alone"].)

Given the deferential standard we apply in determining rationality for equal protection purposes, we conclude public safety, and the desire to punish those persons who commit first degree special circumstance murder more harshly than persons who commit first degree murder without aggravating circumstances, provide a plausible basis for our Legislature to treat these two classifications differently for purposes of section 3051. (See *Heller*, *supra*, 509 U.S. at p. 319 [noting that "rational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices' "]; see also *Turnage*, *supra*, 55 Cal.4th at p. 74.)

13

## DISPOSITION

The order denying defendant relief under section 3051 is affirmed.


                                        BENKE, Acting P. J.

I CONCUR:



O'ROURKE,  J.

Dato, J., Concurring.

I agree with the majority that the exception in Penal Code section 3051, subdivision (h) for persons who were between 18 and 25 when they committed their offense and were sentenced to life imprisonment without possibility of parole (LWOP) does not violate the equal protection guarantees of the United States and California Constitutions.  In large measure I reach this conclusion for the same reasons thoughtfully expressed in Justice Goethal's recent opinion for Division Three of the Fourth Appellate District in *People v. Acosta* (Feb. 9, 2021, No. G057136) ___ Cal.App.5th ___ [2021 Cal.App. Lexis 116] (*Acosta*).

Like the court in *Acosta*, for purposes of an equal protection analysis I believe youthful offenders under the age of 25 who commit murder and are sentenced to LWOP are "similarly situated" to young adult defendants sentenced to life imprisonment with the possibility of parole and juvenile offenders sentenced to LWOP.  (*Acosta, supra,* [2021 Cal.App. Lexis at pp. **13–15].)  Some courts seem willing to peremptorily reject any equal protection challenge by concluding that these groups of youthful offenders are not "similarly situated."  (See, e.g., *In re Williams* (2020) 57 Cal.App.5th 427, 435 (*Williams*) ["Where two groups of individuals are not similarly situated for purposes of the law being challenged, we need not proceed to the next step of the equal protection analysis."].)  They further suggest such a determination can be based on the mere fact that certain defendants were convicted of different crimes.  (*Id.* at p. 435.)  But where a facial classification is challenged there will always be differences between two groups, and to state that the relevant groups are not "similarly situated" is in many respects announcing the conclusion before performing the analysis.  As the Supreme Court has explained, rejecting a constitutional challenge at the outset by finding that two groups are not "similarly situated" would have the effect of

"insulat[ing] the challenged . . . statute from *any* meaningful equal protection review." (*In re Marriage Cases* (2008) 43 Cal.4th 757, 831, fn. 54; see Shay, *Similarly Situated* (2011) 18 Geo. Mason L. Rev. 581, 624 [" 'Similarly situated' should not be used as an end-run around equal protection review."].) In any event, "similar" does not mean "identical." The groups here are "sufficiently similar" with respect to the purpose of the statute because, while they are alike in many respects, they are different in at least one significant way that is the basis for a disparity of treatment. (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1200; quoting *People v. Nguyen* (1997) 54 Cal.App.4th 705, 715.) The question is "whether distinctions between the groups justify the unequal treatment." (*Nguyen,* at p. 715.)

Also like the *Acosta* court, I have some reservations "whether the exclusion for young adult LWOP offenders from [the parole] process is consistent with the statute's purpose and legislative history." (*Acosta, supra,* [2021 Cal.App.Lexis, at p. *18].) I, too, would invite the Legislature to reconsider whether our evolving knowledge of brain development suggests that unalterable judgments about individuals based on what they did between age 18 and 25 may be unjustifiable. (See also *People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1040 (conc. opn. of Segal, J.); *In re Jones* (2019) 42 Cal.App.5th 477, 486–487 (conc. opn. of Pollak, J.).) But while it might be more reasonable to allow youthful LWOP offenders the possibility of parole at some point in time beyond 25 years in prison, giving appropriate deference to the Legislature I cannot say the current judgment implicit in section Penal Code section 3051 is irrational.

DATO, J.

Court of Appeal, Fourth Appellate District, Division One - No. D077095

**S267812**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

_____

THE PEOPLE, Plaintiff and Respondent,

v.

JOSEPH LEON JACKSON, Defendant and Appellant.

_____

The petition for review is denied.

_____

*Chief Justice*

PEOPLE v. JACKSON

S267812

Concurring Statement by Justice Liu

Joseph Leon Jackson shot and killed two people when he was 19 years old, and he was sentenced to two terms of life without the possibility of parole, among other sentences, in 1998. Over two decades later, Jackson sought a youth offender parole hearing under Penal Code section 3051. (All undesignated statutory references are to the Penal Code.) The Court of Appeal affirmed the trial court's denial of this hearing, holding that section 3051 did not violate equal protection by excluding from a youth offender parole hearing people who were between 18 and 25 years old when they committed an offense for which they were sentenced to life without the possibility of parole. (*People v. Jackson* (2021) 61 Cal.App.5th 189, 195–200 (*Jackson*).) Another case, denied review today, raises similar issues. (*People v. Acosta* (2021) 60 Cal.App.5th 769, 774–782, review den. June 9, 2021, S267783 (*Acosta*).)

I continue to believe section 3051's parole eligibility scheme is in tension with equal protection of the laws. (See *People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1041a–1041c [274 Cal.Rptr.3d 267, 288–290] (conc. stmt. of Liu, J.) (*Montelongo*).) This scheme excludes certain people from youth offender parole hearings depending on the crime they committed, even though "the mitigating attributes of youth are not 'crime-specific.' " (*Id.* at p. 1041a [274 Cal.Rptr.3d at p. 289] (conc. stmt. of Liu, J.), quoting *Miller v. Alabama* (2012) 567 U.S. 460, 473.) And it excludes certain 18- to-25-year-olds from

1

these hearings, even though the Legislature has recognized that these mitigating attributes "are found in young adults up to age 25" and "that the ordinary process of neurological and cognitive development continues for several years past age 18." (*Montelongo*, at pp. 1041b, 1041c [274 Cal.Rptr.3d at p. 290 (conc. stmt. of Liu, J.).)

The Legislature has enacted important reforms in this area and can do so again. It can, as the high court recently observed, "categorically prohibit life without parole," "require sentencers to make extra factual findings before sentencing," "direct sentencers to formally explain on the record why a life-without-parole sentence is appropriate notwithstanding the defendant's youth," or "establish rigorous proportionality or other substantive appellate review of life-without-parole sentences." (*Jones v. Mississippi* (2021) 593 U.S. __, __ [141 S.Ct. 1307, 1323].) In other words, the Legislature may require an individualized, on-the-record finding of irreparable corruption before sentencing a defendant to life without parole. Or it can altogether eliminate life without the possibility of parole for youth offenders — a category the Legislature, relying on science, has defined to include persons between 18 and 25 years old — by making all such life inmates eligible for a youth offender parole hearing.

As of this writing, at least 11 justices of the Court of Appeal have called for legislative reconsideration of section 3051. (*In re Murray* (2021) 63 Cal.App.5th 184, 192–193 (maj. opn. of Richman, Acting P. J., joined by Stewart and Miller, JJ.); *Jackson*, *supra*, 61 Cal.App.5th at pp. 201–202 (conc. opn. of Dato, J.); *Acosta*, *supra*, 60 Cal.App.5th at p. 781 (maj. opn. of Goethals, J., joined by Bedsworth, Acting P. J.); *Montelongo*, *supra*, 55 Cal.App.5th at p. 1041 (conc. opn. of Segal, J.); *In re*

*Jones* (2019) 42 Cal.App.5th 477, 486–487 (conc. opn. of Pollak, P. J., joined by Streeter, J.); *People v. Escamilla* (Mar. 18, 2021, F077568) [nonpub. opn.] (maj. opn. of Meehan, J., joined by DeSantos, J.); see also *In re Williams* (2020) 57 Cal.App.5th 427, 436, fn. 7 [acknowledging statutory tension]; *People v. Smith* (Feb. 24, 2021, B305527) [nonpub. opn.] [same].)  I again echo my colleagues in "invit[ing] the Legislature to reconsider whether our evolving knowledge of brain development suggests that unalterable judgments about individuals based on what they did between age 18 and 25 may be unjustifiable." (*Jackson*, at pp. 201–202 (conc. opn. of Dato, J.).)


**LIU, J.**