Filed 10/11/23  P. v. Poncio CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>KARINA LISSETH PONCIO,<br><br>    Defendant and Appellant. | G061931<br><br>(Super. Ct. No. 00CF3110)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Cheri T. Pham, Judge.  Affirmed.

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Randall D. Einhorn and Susan Elizabeth Miller, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Penal Code section 3051[1], enacted in 2013, provides for an independent youthful offender parole hearing (YOPH) so juvenile offenders and certain young adult offenders may present mitigating evidence to the Board of Parole Hearings after a certain number of years of incarceration. With some exceptions not applicable here, *juvenile* offenders are entitled to a YOPH even when sentenced to life in prison without possibility of parole (LWOP). (*Id.*, subd. (b)(4).) But *young adult* offenders are only entitled to the hearing if they are serving parole-eligible sentences. Those young adult offenders sentenced to LWOP are categorically exempted from section 3051 and are not entitled to a YOPH. (*Id.*, subd. (h).)

Appellant was 21 years old in May of 2000 when she assisted a companion in the shootings of two rival gang members in Santa Ana. Her assistance included driving alongside the victims' car, allowing her codefendant to shoot at them, and following the car after the victims attempted to escape so her codefendant could continue shooting. She was charged and convicted of first degree murder by discharging a firearm out of a motor vehicle, which required the court to sentence her to LWOP.

Were she eligible, appellant would get a YOPH under section 3051 in 2025. But given her sentence and her age at the time the crime was committed, she is statutorily ineligible. For this reason, the trial court denied her request for a so-called *Franklin/Cook* proceeding[2] to gather mitigating evidence in support of parole.

---

[1] All further statutory references are to the Penal Code. Section 3051 makes distinctions between those offenders under 18 years of age, and those between the ages of 18 and 25, but it does not explicitly use the phrases "juvenile offenders" and "young adult offenders." We use these phrases in this opinion for purposes of both brevity and clarity; the phrase "juvenile offenders" refers to those persons who committed the crime while under the age of 18 and the phrase "young adult offenders" refers to those who committed the crime between the ages of 18 and 25.

[2] This proceeding, pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*) and *In re Cook* (2019) 7 Cal.5th 439 (*Cook*), allows youthful offenders to gather and put on the record mitigating evidence which would eventually be used in a YOPH.

Our courts are currently split, albeit unevenly, on the constitutionality of section 3051's distinction between young adult LWOP offenders and young adult offenders sentenced to parole-eligible terms.

Most, including this court, have determined the distinction does not violate the equal protection provisions of the federal and state constitutions. (See *In re Williams* (2020) 57 Cal.App.5th 427 (*Williams I*); *People v. Acosta* (2021) 60 Cal.App.5th 769 (*Acosta*); *People v. Jackson* (2021) 61 Cal.App.5th 189 (*Jackson*); *People v. Morales* (2021) 67 Cal.App.5th 326 (*Morales*); *People v. Sands* (2021) 70 Cal.App.5th 193 (*Sands*); *People v. Bolanos* (2023) 87 Cal.App.5th 1069 (*Bolanos*), review granted Apr. 12, 2023, S278803; *People v. Ngo* (2023) 89 Cal.App.5th 116 (*Ngo*), review granted May 17, 2023, S279458.) Nonetheless, many of these same courts – again, including ours – have expressed unease about the distinctions made in the statute and have urged the Legislature to reassess whether these distinctions are legitimate. (See *Acosta*, *supra*, 60 Cal.App.5th at pp. 780-781; *Jackson*, *supra*, 61 Cal.App.5th at pp. 201-202 (conc. opn. of Dato, J.); *Morales*, *supra*, 67 Cal.App.5th at p. 349; *id.* at p. 350 (conc. & dis. opn. of Pollak, P.J.); see also *In re Jones* (2019) 42 Cal.App.5th 477, 486-487 (*Jones*) (conc. opn. of Pollak, p.J.); *People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1039 (*Montelongo*), conc. opn. of Segal, J.; *id.* at p. 1041c (stmt. of Liu, J.); *In re Murray* (2021) 68 Cal.App.5th 456, 464-465.)

In October 2022, Division Seven of the Second District Court of Appeal issued its opinion in *People v. Hardin* (2022) 84 Cal.App.5th 273 (*Hardin*)[3], authored by Presiding Justice Perluss. For the first time, a three-judge panel of a California appellate court held that section 3051 *does* violate equal protection by prohibiting young adult LWOP offenders from getting a YOPH to which their non-LWOP counterparts are entitled. (*Id.* at pp. 288-291.) The California Supreme Court has granted review of

---

[3]    Review granted January 11, 2023, S277487.

*Hardin*, and has deferred action on its review of *Bolanos* and *Ngo* pending the outcome of *Hardin*.

We await our high court's decision in *Hardin*. Until then, we must adhere to rational basis review and affirm the denial of appellant's motion. Our affirmance is without prejudice to appellant's right to bring another *Franklin/Cook* motion should *Hardin* offer her a chance for a YOPH.

## FACTS[4]

Karina Lisseth Poncio and her friend Jorge Arturo Alarcon were members of the Delhi gang. On May 5, 2000, when Poncio was nearly 22 years old, she and Alarcon lay in wait outside a party in Santa Ana attended by members of the rival Alley Boys gang. When two Alley Boys members, Juan Villa and Juan Guillen, exited the party to get more beer, Villa noticed a woman, Poncio, sitting in the driver's seat of a nearby car. He did not know who she was. As Villa and Guillen began to drive away, Poncio pulled her car alongside Villa's so Alarcon could pop up from the back seat and begin shooting at Villa and Guillen. When Villa drove off, Poncio followed and kept up with him so that Alarcon could continue firing until Villa pulled over. He had been shot in the left shoulder while his companion, Guillen, was fatally shot in the head.

A jury convicted Poncio of, among other things, first degree murder of Guillen with special circumstances: to wit, vicariously discharging a firearm from a motor vehicle, and intentionally killing the victim while an active participant and for the benefit of a criminal street gang. Under section 190.2, subdivisions (a)(21) and (22), the special circumstances found by the jury to be true required the court to sentence Poncio to LWOP as to the murder count. We affirmed this aspect of Poncio's sentence on direct appeal.

---

[4] We granted appellant's request for judicial notice of this court's prior opinion in this matter (*People v. Alarcon et al.* (Jan. 5, 2005, G031767) [nonpub. opn.], and in the absence of any similar summary in the record before us, we derive the facts surrounding the crime from that opinion. In doing so, we regret any repetitiveness, but wish to provide context for appellant's request which is now before us.

After section 188 was amended in 2019 to restrict California's felony murder rule, Poncio petitioned for resentencing under section 1170.95. The petition was denied because Poncio was not convicted of murder based on any of the theories impacted by the new legislation. We upheld this ruling on appeal also.

In August 2022, Poncio filed a motion for a *Franklin/Cook* proceeding under section 1203.01 to preserve mitigating evidence for a YOPH and for appointment of counsel to assist her in the proceeding. The trial court denied the motion, citing section 3051, subdivision (h), which renders her, as a young adult LWOP offender, ineligible for a YOPH.

## DISCUSSION

Poncio argues section 3051, subdivision (h)'s exemption for young adult LWOP offenders violates the federal and state right to equal protection of the laws (see U.S. Const., 14th Amend., § 1; Cal. Const., art. I, § 7), and the federal and state prohibition on cruel and unusual punishment. (See U.S. Const., 8th Amend.; Cal. Const., art. I, § 17.) We review such issues de novo, but view the underlying facts "'in the light most favorable to the judgment.' [Citation.]" (See *People v. Wilson* (2020) 56 Cal.App.5th 128, 166-167.)

I.          **Section 3051 (Youthful Offender Parole Hearings)**

As recounted in some detail in *Acosta*, section 3051 came about "in response to a series of decisions" from the federal and state high courts regarding Eighth Amendment limitations on sentencing for juveniles. (*Acosta, supra,* 60 Cal.App.5th at pp. 775-776.) In *C v. Florida* (2010) 560 U.S. 48 (*Graham*), the court determined that LWOP sentences for nonhomicide juvenile offenders violated the Eighth Amendment prohibition on cruel and unusual punishment. (*Id.* at p. 79.) Two years later, in *Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*), the court extended *Graham*'s reach to juvenile homicide offenders given mandatory LWOP sentences. (*Miller*, *supra*, 567 U.S. at p. 465.) In the same year, the California Supreme Court ruled in *People v. Caballero*

(2012) 55 Cal.4th 262 (*Caballero*) that even parole-eligible sentences for juvenile offenders violate the Eighth Amendment if the parole eligibility date falls beyond the offender's natural life expectancy, a so-called de facto LWOP sentence. The *Caballero* court "urge[d] the Legislature to enact legislation establishing a parole eligibility mechanism that provides a defendant serving a de facto life sentence without possibility of parole for nonhomicide crimes that he or she committed as a juvenile with the opportunity to obtain release on a showing of rehabilitation and maturity." (*Id.* at p. 269, fn. 5.) The Legislature obliged by enacting section 3051.

In section 3051's original form, young adult offenders could not receive a YOPH; only juvenile offenders – and only those juvenile offenders with parole-eligible sentences. However, in 2015, the Legislature expanded eligibility to those parole-eligible offenders who committed their crimes under the age of 23, citing recent evidence showing certain areas of the brain relevant to judgment and decisionmaking continued to develop into one's early 20's. (See *Acosta*, *supra*, 60 Cal.App.5th at pp. 776-777.) In 2017, the age was increased still further to 25 based on more research showing the functional capacity of the prefrontal cortex – responsible for decisionmaking and impulse control – continued to improve and mature between ages 18 and 25. (*Id.* at p. 777.)

Later in 2017, the Legislature extended eligibility to juvenile offenders sentenced to LWOP. (*Acosta, supra,* 60 Cal.App.5th at p. 777.) In light of the United States Supreme Court's ruling in *Montgomery v. Louisiana* (2016) 577 U.S. 190 (*Montgomery*) that *Miller*'s prohibition on juvenile LWOP sentences applied retroactively, the Legislature wanted to avoid a deluge of resentencing hearings. (*Acosta*, *supra*, 60 Cal.App.5th at p. 777.) The Legislature nevertheless left the exemption for young adult LWOP offenders in place.

## II.        Equal Protection

"Both the Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution guarantee to all persons the equal

6

protection of the laws.  The right to equal protection of the laws is violated when 'the government . . . treat[s] a [similarly situated] group of people unequally without some justification.'  (*People v. Chatman* (2018) 4 Cal.5th 277, 288; see *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 568.)  'The California equal protection clause offers substantially similar protection to the federal equal protection clause.'  (*People v. Laird* (2018) 27 Cal.App.5th 458, 469.)"  (*Jackson*, *supra*, 61 Cal.App.5th at p. 195.)  Thus, the first prong of an equal protection analysis requires us to determine whether "'"the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.'"'  [Citations.]"  (*Acosta*, *supra*, 60 Cal.App.5th at p. 778.)

Once the first prong is met, we determine whether there is a justification for the difference.  "Where, as here, a statute involves neither a suspect class nor a fundamental right, it need only meet minimum equal protection standards, and survive 'rational basis review.'  (*People v. Wilkinson* (2004) 33 Cal.4th 821, 836.)  A criminal defendant has no vested interest "'in a specific term of imprisonment or in the designation a particular crime receives.'"  (*Id.* at p. 838.)  It is both the prerogative and the duty of the Legislature to define degrees of culpability and punishment, and to distinguish between crimes in this regard.  (*Id.* at p. 840.)  Courts routinely decline to intrude upon the 'broad discretion' such policy judgments entail.  (*People v. Ward* (2005) 36 Cal.4th 186, 217.)  Equal protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic of the law.  (*Heller v. Doe* (1993) 509 U.S. 312, 319 (*Heller*).)  [¶]  Under these principles, equal protection of the law is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.'  (*Heller*, *supra*, 509 U.S. 312, 320.)  In other words, the legislation survives constitutional scrutiny as long as there is "'any reasonably conceivable state of facts that could provide a rational basis for the classification.'"  (*Ibid.*)  This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve.  Nor must the underlying

7

rationale be empirically substantiated. (*Ibid*.) While the realities of the subject matter cannot be completely ignored (*id.* at p. 321), a court may engage in "'rational speculation'" as to the justifications for the legislative choice. (*Id.* at p. 320). It is immaterial for rational basis review 'whether or not' any such speculation has 'a foundation in the record.' (*Id.* at pp. 320-321; see *Nordlinger v. Hahn* (1992) 505 U.S. 1, 11, 15-16; *Wilkinson*, *supra*, 33 Cal.4th 821, 836; *Warden v. State Bar* (1999) 21 Cal.4th 628, 644-645.)" (*People v. Turnage* (2012) 55 Cal.4th 62, 74-75.)

Some courts have denied equal protection challenges to section 3051 on the first prong of the analysis, holding young adult LWOP offenders are not similarly situated to young adult parole-eligible offenders. (See *Williams I*, *supra*, 57 Cal.App.5th at p. 435; *Jackson, supra,* 61 Cal.App.5th at p. 199.) We concluded the opposite in *Acosta*, finding the two groups are similarly situated "not for any purpose, but for the purpose of section 3051." (*Acosta, supra*, 60 Cal.App.5th at p. 778.) Since the Legislature enacted section 3051 to provide a mechanism for young offenders to show they have outgrown their previous impulses, we decided "'[b]oth groups are equally likely to demonstrate improved judgment and decisionmaking as they reach emotional and cognitive maturity.'" (*Id.* at p. 779, quoting *Williams I*, *supra*, 57 Cal.App.5th at p. 435.) We see no reason to stray from that conclusion. Poncio passes the first prong of the equal protection analysis.

The second prong is more problematic. As stated in our introduction, the fate of section 3051, subdivision (h) as it pertains to equal protection remains uncertain while *Hardin, Bolanos,* and *Ngo* are pending.[5] We would be remiss if we did not acknowledge the shift in the legal landscape since we decided *Acosta* in early February 2021. At that time, published cases on the equal protection topic were more scarce.

---

[5] Subdivision (h)'s exemption extends to those sentenced under section 667.61 for violent sex offenses, and this is also being challenged on equal protection grounds in a fourth case, *People v. Williams* (2020) 47 Cal.App.5th 475 (*Williams II*), review granted July 22, 2020, S262229. As of the date of filing this opinion, *Williams II* remains pending before the California Supreme Court.

Despite our own concerns, and the concerns expressed by the likes of Justice Pollak in *Jones* and Justices Liu and Segal in *Montelongo*, the weight and tenor of the authorities was still decidedly in favor of section 3051's constitutionality. The prevailing instinct was to defer to the Legislature, and the California Supreme Court, with the exception of *Williams II,* had repeatedly declined to grant review of the equal protection issue.

Since we published *Acosta*, however, the chorus of concern over section 3051's validity has only grown. There have been no less than six more opinions published on the same topic – *Jackson*, *Morales*, *Sands*, *Hardin*, *Bolanos*, and *Ngo*, with *Hardin* having the most seismic impact for obvious reasons. While section 3051's differential treatment of young adult offenders continues to pass constitutional muster with the majority of our courts, it does so with less than full-throated support. With "at least 11 justices of the Court of Appeal hav[ing] called for legislative reconsideration of section 3051" (*Jackson*, *supra*, 61 Cal.App.5th at p. 202 (conc. of Liu, J.), its days more and more seem numbered.

Even so, section 3051's fate is now in the hands of a higher court than ours. As was pointed out in *Acosta*, "we cannot insert our own policy concerns into the analysis." (*Acosta, supra,* 60 Cal.App.5th at p. 781.) Regardless of how we feel about the issue, our task is to determine whether there is a rational basis for the present form of the statute – a legitimate governmental purpose that can be linked to the exclusion of young adult LWOP offenders. And, as we said in *Acosta*, the severity of the crime provides such a basis.

Poncio's crime was not insignificant. A special circumstance murder under section 190.2 carries a mandatory sentence of either death or LWOP. These are "'the harshest penalties available under our penal system and are reserved for crimes of the most heinous nature.'" (*Acosta*, *supra*, 60 Cal.App.5th at p. 780 (quoting *Williams I*, *supra*, 57 Cal.App.5th at p. 436).) Because isolating offenders from the public is an "indisputably legitimate penological goal[]" (see *In re Grant* (1976) 18 Cal.3d 1, 12), the

9

Legislature may well have determined that LWOP is an appropriate way to punish such crimes when committed by young adult offenders who are further along in their development process than juveniles, and that a *Franklin/Cook* hearing is not appropriate because of that lengthier development. The wisdom of that decision is – thankfully – not before us.

Additionally, legislators may have excluded young adult LWOP offenders from their 2017 amendment to the statute because they were specifically trying to bring it into alignment with *Miller* and *Montgomery*. The *Sands* court was correct "that the Legislature could rationally decide to remedy unconstitutional sentences but go no further." (*Sands*, *supra*, 70 Cal.App.5th at p. 204.)[6]

In fine, while we continue to urge the Legislature to take another look at section 3051 to be sure its present form matches their present thinking, we adhere to *Acosta* in finding no equal protection violation, pending clarification from our state's high court.

### III. Cruel and Unusual Punishment

Poncio alternatively argues that section 3051 violates the Eighth Amendment as applied in *Miller*. Because the statute was enacted in response to Eighth Amendment concerns, she argues, and the Legislature saw fit to extend YOPH eligibility to parole-eligible young adult offenders based on concerns about their diminished

---

[6] We must admit this rationale seems less persuasive in light of two facts. First, the Legislature's decision to raise the age of eligibility for YOPH's to those under 25 years of age was made in the very same year. As Justice Perluss perceptively noted, "The purpose of the current iteration of section 3051 generally providing [YOPH's] for individuals convicted of a controlling offense committed when the person was 25 years old or younger is that the distinctive attributes of youth . . . apply equally to young adults up to age 25. *Having made that determination*, there was no rational basis for the Legislature to exclude otherwise similarly situated offenders from any opportunity for a [YOPH] based solely on the crime committed or the sentence imposed, factors unrelated to a determination the offender is 'irreparably corrupt.'" (*Hardin*, *supra*, 84 Cal.App.5th at p. 279, italics added.) The second is *Miller*'s admonition that the juvenile brain and the vulnerabilities which make it less culpable do not operate in a "crime-specific" way. "Those features are evident in the same way, and to the same degree, when . . . a botched robbery turns into a killing." (*Miller*, *supra*, 567 U.S. at p. 473.) By excluding young adult LWOP offenders from the statute, the Legislature arguably was employing a crime-specific prism.

culpability, the failure to extend YOPH eligibility to young adult LWOP offenders cannot be supported.  We disagree.

As we observed in *Acosta*, *Miller* held only that the Eighth Amendment prohibits LWOP terms for juvenile offenders.[7]  The prohibition was never extended to young adult offenders like Poncio.  (*Acosta*, *supra*, 60 Cal.App.5th at p. 781.)  The Legislature's choice to extend YOPH eligibility to young adult offenders with parole-eligible sentences does not automatically render LWOP sentences for young adult offenders cruel and unusual.

## DISPOSITION

The order denying appellant a *Franklin/Cook* proceeding is affirmed, without prejudice to appellant's right to refile such a motion should the California Supreme Court affirm the ruling of the Court of Appeal in *Hardin*.


BEDSWORTH, ACTING P.J.

WE CONCUR:


MOORE, J.


MOTOIKE, J.

---

[7]  For this reason, Poncio's invocation of *Franklin* in support of this argument also rings hollow, as *Franklin* involved a 16-year-old offender.  (*Franklin*, *supra*, 63 Cal.4th at p. 268.)

11